Brown et al. *v.* Hogle et al.

CYRUS R. BROWN *et al.*, Plaintiffs in Error, *v.* MICHAEL HOGLE, and JOHN CHAMBERLAIN, Defendants in Error.

ERROR TO IROQUOIS.

Where a bill in equity sets forth various claims to the interposition of the court, and the defendant files a general demurrer, the demurrer must be overruled if any of the claims afford a proper case for the jurisdiction of the court.

The act of 1861, in reference to the time for the collection of taxes in counties which have adopted township organization, was intended to alter the time for the collection of the tax of 1860 only, and does not affect the general revenue law except for that year.

The requirement, that the notice, and the application for judgment against delinquent lands, shall be to the June term of the court, is peremptory and not directory merely, and an application at a different term, and judgment, will not be sustained. A judgment and sale under such circumstances is void, and may be attacked collaterally.

It is fraud for a tenant in common to permit the land he holds in common with others, to be sold for taxes, and he himself become the purchaser for his own exclusive benefit.

At a tax sale it is the duty of the treasurer to attend at the court-house on the day specified in the advertisement, and, between certain hours, offer each tract of delinquent land separately, so as to allow fair competition, and to collect the taxes at the least possible loss to the owner.

To allow a person to select from the tax list a portion of the delinquent lands, and become the purchaser of the whole for the tax due, without competition, is contrary to equity, and fraudulent.

THIS is a bill in chancery, filed in the Iroquois Circuit Court, by the complainants, against the defendants, to set aside certain judgments rendered and entered, in the County Court of Iroquois county, against certain lands described in the bill of complaint, and, also, to cancel two certain certificates, given at the time of the sale of said lands; one to Michael Hogle, and one to one A. G. Willard, and afterwards assigned to Hogle, by Willard.

The defendants demurred to the bill, and it was dismissed by the court.

The facts in the case are stated in the opinion.

JAMES FLETCHER, for Plaintiffs in Error.

The said complainants and defendants have agreed in writing, that the above entitled cause shall be decided by the Supreme Court in the Second Grand Division, at the next term of said Supreme Court, instead of in the Third Grand Division.

It is also agreed and stipulated in writing, that the county of Iroquois adopted the township organization law in the spring of 1856, and has been operating under said township organization law ever since that time.

The law of 1861, entitled "An act to postpone the collection of the revenue for 1860," changed the time for the collectors of the several townships, in counties which had adopted township organization, to make return of the warrants issued for the collection of taxes for the year 1860, from the time required by the law then in force, which time was thereby extended to the 15th day of April, 1861. And the county treasurer was, by said act, commanded to apply for judgment against delinquent lands at the June term of the County Court; and the county treasurer was required to make final settlement with the auditor on or before the 10th day of July next thereafter. See Session Laws of 1861, page 168, section 1.

By the laws in force at the time said act of the legislature was passed, the township collectors of the several townships, in counties which had adopted township organization, were required to return their said warrants and make settlement with the treasurer, etc., on or before the 15th day of February of each year. Session Laws of 1853, page 20, section 48, and other sections in the revenue law of 1853.

And all the lands upon which the taxes remained unpaid on the 15th day of March, of each year, were declared delinquent by the laws of 1855, and all such lands were commanded to be sold, on the second Monday of May. Session Laws of 1855, page 39, section 10.

The laws of 1853, required the collector to publish an advertisement, in some newspaper in his county, etc., which advertisement should be once published at least four weeks previous to the term of the County Court at which judgment should be prayed; and should give notice therein that he would apply, at the —— term of said court, for judgment against the delinquent lands of his county, for the taxes, interest and costs due thereon; and should also give notice that, on the first Monday next succeeding the day fixed by law for the commencement of said County Court, all said lands would be exposed to public sale, at the place of holding said court, etc.; and that said advertisement should be deemed and taken to be sufficient and legal notice, both of the application for judgment, and also the sale of said lands. Session Laws of 1853, pages 74 and 75, section 26.

The laws of 1855, page 39, section 10, as aforesaid, fixed the time of the sale of said delinquent lands, upon the second Monday of May next after they became delinquent; and the said law of 1853, declared that said lands should be sold on the first Monday next succeeding the time fixed by law for the commencement of the County Court; so that the said laws of 1853 and 1855, taken together, fix the time of the holding of the County Court on the first Monday of May, at which judgment against delinquent lands should be rendered, and the second Monday of May, when they should be sold.

If, for any cause, the County Court could not be holden at

9

the term at which judgment should be prayed, then the cause stood continued until the next term by operation of law, and judgment should be rendered at the term to which it was continued.   Session Laws of 1853, page 77, section 30.

By the laws of 1853, page 84, sections 52 and 53, it was made the duty of the treasurer to attend at the court-house, in his county, on the day specified in the notice so given by him, as aforesaid, and then and there, between the hours of ten o'clock A. M. and six o'clock P. M., proceed to offer for sale, separately, each tract of land, etc.; the person at such sale offering to pay the taxes and costs charged on each tract, for the least quantity thereof, to be taken from the east side of such tract, should be the purchaser.   Thus stood the law in relation to the collection of the revenue of the several counties in this State, which had adopted the township organization law, at the time of the passage of the said act of the legislature of 1861; and from the laws in force at that time, the following facts and requirements of the law are deducible, to wit:

The township collectors were required to return their warrants, and make settlement with the treasurer, on or before the 15th day of February of each year; and said collector was required to publish a notice of all the lands as delinquent, the taxes upon which had not been paid, on the 15th day of March; in which advertisement he should give notice that he would apply, at the May term of the County Court of his county, for judgment, and also therein give notice that he would sell the lands against which judgment should be rendered, on Monday next after the rendition of said judgment, and that the County Court, at the time appointed in said notice, should render judgment against the said delinquent lands; unless said court should be prevented from so doing, from some cause, and should said court be prevented from so doing, then judgment should be so rendered at the next term; and on the Monday next following the rendition of such judgment, the treasurer should attend at the court-house, in his county, and then and there, publicly, proceed to offer each tract of land separately, to the person offering to pay the

taxes and costs due, for the least quantity of such tract, to be taken from the east side thereof.

I.  The first point in this case, made by the bill in chancery, and which the complainants insist upon, is, that the application for judgment against the delinquent lands, among which were the lands described in said bill of complaint, was not made by the collector of said county, at the June term of the County Court of said county, as the said first section of said act of the legislature required.  See Session Laws of 1861, page 168, section 1.

On the contrary, the said treasurer gave notice that he would apply for such judgment, at the July term of said County Court; and he did so apply for judgment, and the County Court rendered judgment against said delinquent lands at said July term, without any authority so to do.  Said County Court had no authority to render said judgment, at the July term, unless it was authorized to do so by the statute. The said act of the legislature of 1861, certainly gave no such power.  Then it follows that it had no such power, unless the laws in force at the time of the passage of said act still remain in force, notwithstanding said act, at the time of the rendition of said judgment; and being in force, they conferred such authority upon said court.  If said laws were in force at the time of the rendition of said judgment, then both the old laws, and the said act of 1861, were in force, or else the act of 1861 was a nullity, and had no binding force or effect whatever, and conferred no authority upon said court, at all, at any time, to have rendered said judgment; and, in that case, the said act of 1861 would have given it no authority to have rendered a judgment at the June term.  If the old laws were in force, then it must have been the laws of 1853, and the laws of 1855, above referred to, which commanded the treasurer to advertise said delinquent lands, and give notice that he would apply to the County Court, on the first Monday of May, for a judgment against them, for the amount of taxes and costs due thereon; and that he would sell them on the second Monday of May next, after the first day of the term of said court at which said judgment should be rendered.

Certainly these laws would have conferred upon said County Court no authority to render said judgment at the July term of said court. But it is said, that, by the laws of 1855, the collector may advertise the delinquent lands, etc., on the second Monday of March, or at any time thereafter, (Laws of 1855, page 39, section 8), and this section would give the treasurer a latitude to advertise said delinquent lands, at any time after said 15th day of March, and take judgment at any regular term of the County Court thereafter. But said section eight must be taken and construed with section ten, of said laws of 1855, and section thirty of the revenue law of February 12, 1853, and then his duty is clear, making it obligatory upon him to apply at the May term of the County Court, for judgment, and sell on the second Monday of May; therefore, although said section eight would seem to be indefinite, and give great latitude in the treasurer, in making his advertisement, yet, when construed with said sections ten and thirty, the law is clear, that said advertisement must be made between the 15th day of March, and the first Monday in May, and when taken in connection with the 26th section of the revenue act of 1853, the said advertisement must be made at least four weeks previous to the term of said County Court at which said judgment is rendered. And it is again said, that under the laws in force at the time of the passage of said act of 1861, that, if for any cause, judgment should not be rendered at the time application is made, then judgment may be taken at a subsequent term. We admit that proposition, but still the advertisement and application must be made by the treasurer, and notice given, that he will apply at the term of the County Court, as designated by the law, at which judgment against delinquent lands should be rendered; and then, if for any cause the court shall not be holden, or judgment rendered, the law continues the cause until the next term of said court, and dispenses with a re-advertisement. Laws of 1853, page 77, section 30. This law does not dispense with the advertisement being made, at the proper term of the court, as designated by law, for obtaining judgment against delinquent lands. But under these laws, if in force at the time of

the rendition of said judgment, said laws do not help the defendants, nor confer upon the court any jurisdiction, or authority, to render said judgment, for the reason said court was not authorized to render said judgment at the said July term, nor was the treasurer authorized to apply at said term for judgment, and the old law does not aid the said law of 1861, if in force at all, because the treasurer did not apply at the June term for judgment. If the treasurer had applied at the June term, and given proper notice for such purpose, and had the old law then been in force, together with the said law of 1861, it might be said, that said cause was continued by operation of law, until the July term. And in that case, the County Court might, possibly, have had jurisdiction to render said judgment. But such was not the case, and the old law could not have been in force, and if it was, it could not have aided the law of 1861.

The said act of the legislature of 1861, is perfect within itself, as to the time for the treasurer to make application to the County Court for judgment against said delinquent lands, and the rendition of said judgment, and the time for the return of the collectors' warrants, and left the old law in force in all other respects, except the time for said returns, and application and judgment, and the final settlement by the treasurer, with the auditor, and needs no aid, from the old law to enforce it in those respects, and therefore, the old law was in force, or else the law of 1861 was in force; they both could not exist together in regard to those matters in which the old law was changed by the new law, because one is inconsistent with the other; and, in that case, the old law must give place to the new one; therefore, the new law was in force, and the old law was suspended during the year 1861, and then the old law revived again, and the new law became void, because said law of 1861 only operated during the year 1861, for the purpose of collecting the revenue of 1860 ; and the law of 1861 being in force at the time of the rendition of said judgment, the County Court had no jurisdiction, or authority, to render said judgment at the July term. It never was the intention of the legislature that judgment

should be rendered at the July term of the County Court, for the reason that the treasurer should make final settlement with the auditor, on or before the 10th day of July, which was five days before the rendition of said judgment; and final settlement could not be made until after the sale of the delinquent lands. The said judgment being void, the sale of said lands, made by the treasurer, under and by virtue of said judgment, was also void.

It is insisted upon by the defendants, that the time fixed for the return of the warrants, by the township collectors, and the time fixed for the treasurer to make application for judgment, etc., is only directory, and not peremptory, and that the rendition of said judgment, at the July term, was legal; and to sustain this position they cite numerous authorities. We have examined those authorities, and are firmly convinced that none of them sustain the position which they take; but, on the contrary, do sustain the position which the complainants take — that the words of the statute of 1861 are a vindication of the power of the County Court to render judgment against delinquent lands. The County Court had jurisdiction at the June term, if application had been made to take judgment at said June term, but had no jurisdiction at any other time. One case is cited by defendants, which bears upon this question, in favor of the position which complainants take, and, we apprehend, not one authority against such position, (12 Ill. 305,) which was a case wherein the Governor was authorized to receive sealed bids up to a certain time, and bids after that time were considered void, and his duty, in that respect, was peremptory, although in regard to the opening of said bids, only directory. In the one case, it would work an injury to the bidders, if a different construction should be given, while in the other case, no one could be injured. So it is in this case; if the words of the statute of 1861, in relation to time, are only directory, then the County Court might have rendered judgment at any time after the time for holding court in June, as fixed by law, to the injury of all persons who owned lands, as returned delinquent. The object of fixing a term of court at which the

treasurer may make application for judgment against delinquent lands, is, that all persons who own lands in the county where such application is made, may know to a certainty when such application will be made, and may appear at the time appointed by law, for such application to be made, and make such defense as the law entitles them to, and show such cause as they can, why judgment should not be rendered against their lands, etc. But if no time is fixed by the law to hold the court, or to make such application, no person will know or be bound to take notice of the time for the rendition of judgment against their lands. So the object of the law was to make it peremptory, on the treasurer, to apply at the June term, so that all persons might appear and make defense, if they felt disposed so to do, and for the purpose of allowing the treasurer to make final settlement with the auditor on or before the 10th day of July.

The statute should be complied with, both in the application for judgment and the rendition of the judgment, or the court has no jurisdiction; and the sale must be in conformity with law. *Spellman* v. *Curtenius*, 12 Ill. 409; *Hough* v. *Hastings*, 18 Ill. 312; *Pickett* v. *Hartsock*, 15 Ill. 279; *Marsh* v. *Chesnut*, 14 Ill. 223; *Hope* v. *Sawyer*, 14 Ill. 254; *Dukes* v. *Rowley*, 24 Ill. 210; *Essington* v. *Neill*, 21 Ill. 139; *Morgans* v. *Camp*, 16 Ill. 175; *Lane* v. *Bommelmann*, 21 Ill. 143.

The law does not incline to any liberal intendments in a sale of lands for taxes. *Lane* v. *Bommelmann*, 21 Ill. 143; *Ronkendorf* v. *Taylor's Lessee*, 4 Peters, 349; *Ganns et al.* v. *Stiles*, 14 Peters, 322.

But, it is said, the complainants having suffered judgment to be rendered against said lands, by a court of competent jurisdiction, cannot now abandon their statutory right, which they had, of making their appearance at the time said judgment was rendered, and of making such defense as they had, against the rendition of said judgment; and, if dissatisfied, then of appealing, under the power given in the statute to take an appeal to the Circuit Court when parties feel aggrieved. They having slept upon their rights, cannot now be heard in this collateral manner, when they attack the

validity of the said judgment. And it is said that said judgment is valid until reversed by an appellate court, of competent jurisdiction. This position of the defendants might, perhaps, be correct, if said County Court had jurisdiction to render said judgment; but is incorrect, if said court had no jurisdiction to render said judgment. In the one case, its errors could only be inquired into, by the appellate court; while in the other, they may be inquired into, in any court, and in any proceeding, when they may come in question, and the complainants were not compelled to appeal, to correct said judgment, because said judgment, if void, is but waste paper, and has no binding force or effect anywhere. If this position be correct, and said judgment is void for want of jurisdiction in the court to render it, which we claim to be the fact, then it follows that we may attack said judgment in this proceeding, and rightfully and successfully. *Buckmaster* v. *Carlin*, 3 Scam. 104; *Voorhees* v. *U. S. Bank*, 10 Peters, 468; *Thompson* v. *Tolmie*, 2 Peters, 162; *Lessee* v. *Kennedy*, 5 Cranch, 173.

The court of chancery will take jurisdiction of this suit, and give the complainants the relief prayed for, for the reason, a court of law has no jurisdiction over the case, and cannot afford a complete remedy, for the reason, that notwithstanding said judgment and sale is void, and does confer no title upon the purchaser, Hogle; yet, by virtue of the act of the legislature of 1861, entitled "An act to amend the revenue law," by virtue of said certificate of purchase, the said Hogle will be entitled to a tax deed, at the expiration of two years from the date thereof, to said described lands. And when he shall obtain such deed, the said complainants will be compelled to tender to said defendant Hogle, or deposit the same in court, for his use, the amount of the redemption money now provided by law, with ten per cent. per annum interest thereon, from the date of said deed to the time of said tender or deposit, before they will be permitted, in any suit or controversy in this State, to question the validity of said deed, or the judgment and sale upon which it shall be founded, to the great injury of said complainants. See Session Laws 1861, page

170, section 1. Against this statute a court of law can give no relief, and by the rules of law, said complainants will be compelled to pay the said redemption money and interest, unlawfully and unjustly, before they will be received into a court of law, to redress their grievances, which is contrary to the very spirit of a court of equity, and in just such cases a court of equity can and will afford complete relief. A court of equity will afford relief when a court of law cannot afford a complete remedy, in just such matters as this cause presents. The case of *Fuller* v. *Paige*, 26 Ill. 351, is cited by the defendants as a strong case to support the position which the defendants take; but it will be seen from this case, if a party has not a complete remedy at law, chancery will take jurisdiction, and give the proper relief.

It will be seen, that from all the authorities of our own State, when the courts have refused to grant relief, in case of taxes and tax sales, such refusal has been based upon the ground that the party aggrieved has a complete remedy at law, and that the court of chancery would not interfere on the ground of there being mere irregularities committed by the officers, whose duty it was to assess the property and collect the revenue. But when there is no complete remedy at law, and property has been sold without any authority to sell it, for the payment of taxes, the Supreme Court of this State has nowhere decided that a court of chancery would not give relief; nor are we able to find such decision anywhere, on any principle of equity, that would lead to such conclusion; but, on the other hand, the Supreme Court of this State has strongly intimated that in such cases chancery would give relief. *Grove* v. *School Inspectors of Peoria*, 20 Ill. 541; *Metz et al.* v. *Anderson et al.*, 23 Ill. 467; *Merritt* v. *Ferris*, 22 Ill. 303; *Munson* v. *Minor*, 22 Ill. 602; *Marsh* v. *Chesnut*, 14 Ill. 223; *Cougill et al.* v. *Long*, 15 Ill. 202; 1 Story's Equity, sec. 49.

The said complainants are entitled to relief on the principle *quia timet*, that is, for fear that the said certificates may be vexatiously or injuriously used against them, and that they will throw a cloud or suspicion over their title; and that they

will be compelled to pay the said redemption money, on said lands, etc., after the tax deed shall be granted, before they will be allowed to question the validity of said deed, and the said judgment and sale, upon which such deed shall be founded.   2 Story's Eq. Juris., secs. 694, 698, 699, 700, 701, 702 ; *Hamilton* v. *Cummins*, 1 John. Ch. R. 517 ; *Pettit* v. *Shepard*, 5 Paige Ch. R. 501.

If the said certificates were void upon their face, and would not entitle said Hogle to a tax deed, which would ripen into such a title as could be used against the complainants, vexatiously, or injuriously, under the said law of 1861, then, and in that case, there might be a question as to the right of a court of chancery to interfere.   *Van Dorn* v. *Mayor*, 9 Paige, 388 ; *Piersoll* v. *Elliott*, 6 Peters, 95, 98.

But such is not the case.   The said certificate, though void, will entitle said Hogle to a deed, which will compel the complainants to pay said redemption money, before they will be allowed to attack it.

The said judgment, sale, and certificate being void, the said tax receipt, which the said Hogle obtained from the said George King, treasurer, for the taxes of 1861, upon said lands, as referred to in said bill, is also void, because the said Hogle paid said taxes voluntarily, without compulsion of, and without the request of the said complainants, and has no right to hold them or use them vexatiously, or injuriously, against said complainants.

II.   It was made the duty of the treasurer to attend at the court-house, on the day specified in the notice, for sale of said delinquent lands, and then and there, between the hours of ten o'clock A. M., and six o'clock P. M., proceed to offer for sale, separately, each tract of land, etc., in the delinquent list, to the person at such sale offering to pay the taxes and costs charged on each tract, for the least quantity thereof; and the person who should so offer to pay said taxes and costs, for the least quantity of said lands, should have been declared the purchaser of such quantity, to be taken from the east side of such tract.   Laws of 1853, page 84, secs. 52, 53.

These two sections were passed in order that the treasurer

should be compelled to sell the delinquent lands at the time appointed by law to sell the same, and that such sale should be made openly, publicly and fairly, and that no more of said delinquent lands should be sold than that which was absolutely necessary to pay the legal demands of the State against the same, for taxes and costs, and for this purpose a fair competition in all bidders should be allowed, and in nowise restricted, for such is the policy of the law in all public sales of property. And when such competition is prevented, whether the same is done intentionally or not, by the officer whose duty it is to sell, the same damage would be done to the owner in the one case as in the other. The object of the treasurer's notice of the sale of said lands, at the time appointed by law, was to apprise all persons that said lands would be sold at the time the law declared they should be be sold, and at the time specified in the notice that they would be sold, and thereby secure competition at the sale, and to prevent any more of said lands from being sold than was absolutely necessary to pay the said demands upon them. And when the day of the sale arrived, then it was the duty of the said treasurer to have offered said lands as aforesaid, in such manner as the law provided they should be offered, so as to preserve such competition in the bidders, and have prevented injury to the said owners as the law has wisely guarded against. But did the said treasurer do so? The treasurer did not offer for sale said tracts of land as the law requires, and did not offer the same at public auction, but did, after the day appointed for said sale, in the notice aforesaid, continue said sale from day to day, and did not offer said lands in their order of sale; but the said treasurer allowed said Willard and said Hogle to go before him, and designate and select said tracts of land, and each of them, out of their order, and request the sale thereof, without regard to bidders or competition in bidding, and by means thereof a fair competition was prevented, and in consequence thereof, the whole of said tracts of land, and each of them, was sold for the nominal sum aforesaid, contrary to the statute in such case made

and provided, and against the principles of equity. *Hope* v. *Sawyer*, 14 Ill. 254.

Upon every principle of law and equity, the complainants should prevail, and the decision of the court should be reversed.

CHESTER KINNEY, for Defendants in Error.

I. The first point made by the complainants, is, that the application for judgment against said lands, was not made at the time and term of the court required by the law of 1861. See Session Laws of 1861, at page 168. The judgment, as appears, was entered at the July term of the County Court, instead of being so applied for and entered at the June term, of the same year.

This question involves a construction of the statute of 1861. It is admitted that the county of Iroquois was, at the time of the levy of the tax, the rendition of the judgment, and the sale of the land, acting under the township organization, and that all proceedings had in the premises, were under and by virtue of the township organization laws of this State.

The defendants take the position, and assume that the law of 1861 is amendatory of the former acts, as to the time of collecting taxes, making returns, etc., etc., and, as we apprehend, directory only in its terms. It is also admitted, that under and by virtue of this act, (when taken alone,) that applications for judgments against lands, for delinquent taxes, were to be applied for at the June term of the County Court. But, in construing this statute, other statutes, to which the act in question is amendatory, are not to be lost sight of — all are to be construed together.

The words " shall apply," etc., are used in the act. Still, it does not follow that a failure to so apply, at the June term, renders a judgment, rendered and entered after that time, void. The word shall, in the sense in which it is used, is merely directory. The intention of the law makers should be consulted.

On this point, see 6 Wend. 486; 2 Denio, 160; 5 Cowen,

269 ; 2 Mass. 230 ; 3 Hill, 42, 46 ; 12 Ill. 305 ; Laws of 1848 and 1849 ; 1 Gilm. 173.

II.   The complainants have a perfect remedy at law.

See Laws of 1849 ; Laws of 1853 ; Scates' Comp., p. 1017, sec. 13 ; ib., p. 1077, sec. 36 ; ib., p. 1096, sec. 40.

That remedy is by appeal, as given by the statutes, as above cited.   Hence, a court of equity has no jurisdiction over the subject-matter.

On this point, see Story's Equity Pleadings, secs. 472, 473, 464, 490 ; 26 Wend. 132, in which the doctrine is fully reviewed; 6 Johnson's Ch. R. 28, 89 ; 1 Paige Ch. R. 548, 114 ; 3 ib. 573 ; 10 ib. 539 ; 2 ib. 396; 1 Cowen, 215.

The complainants having suffered judgment at law to pass against them, in a court of competent jurisdiction, on a trial, and upon the proof required by the statute, in such cases, while the same reasons existed in law as now exist why judgment should not pass, and may have been (if proved) a perfect defense at law, and of which the complainants were fully cognizant, before the trial or judgment, cannot now abandon their statute right, to appeal and be relieved in a court of equity.   This being a proceeding *in rem*, we apprehend, makes no difference.   The judgment is a legal and valid one, until vacated or reversed by a court of competent jurisdiction, and the only remedy is by an appeal, as in other cases. See 4 Johnson's Ch. R. 91, 566 ; 1 ib. 593, 465 ; 5 Paige's Ch. R. 249 ; Breese, 60 ; 3 Johnson's Ch. R. 351, 395 ; 17 ib. 446; 7 Paige's Ch. R. 157 ; 4 Johnson's R. 510 ; Breese, 147, 126, 136, 193, 194.

The statute (Scates' Comp. 1096) having granted to all persons aggrieved by the decisions in such cases, the right to appeal therefrom, we take the rule to be well settled, that if a party feeling himself aggrieved, fails to take an appeal, or sue out a writ of *certiorari*, or writ of error, where such writs are allowed, when he might have done so, and saved his rights thereby, a court of equity will not entertain a bill, to set aside the judgment at law, or any proceeding under it, for a matter available and cognizable, for defense in the same court, or in an appellate court, of like common law

jurisdiction. See 13 Ill. 157, and the opinion of Chief Justice CATON, at page 168.

The case last cited comes within the point above made, inasmuch as it in terms holds, that had the party had the statute notice, (which the complainants in this case had,) equity would not relieve him from the judgment at law, and had it been within the power of the party to appeal, and he failed to do so, he could not then invoke the aid of a court of equity. In this case, the complainants do not charge that they had no notice, or that the judgment against the land was obtained by fraud, or inevitable accident, or that they have attempted to take an appeal, or that a court of law does not grant adequate relief.

This question has been fully decided, by analogy at least, in our own State, in the case of *McBride* v. *The City of Chicago*, 22 Ill. 574.

And again decided and approved, and fully determined in the case of *City of Peoria* v. *Kidder*, 26 Ill. 351, and opinion of the court, at page 357.

III. The point raised by the complainants' bill : That the sale was not made in conformity to law, in this, that the lands were not sold in their order, but parties, to wit, Hogle and Willard, were permitted to select out of their order such pieces or parcels of land as they desired to purchase, and have the same struck off to them, out of their place and order of sale, etc.—does not vitiate the sale, or make the same void, even if that be true as charged. It is a sale, notwithstanding. And the complainants can only litigate the regularity of the sale after having first complied with the law of February 21, 1861, as found on page 170 of Session Laws of that year. They must first tender to the claimant under the tax sale or deed, or deposit in court, the amount of the redemption money, with ten per cent. per annum, etc.

IV. The complainants must do equity before they ask it. They must come into court with clean hands. The statute of 1861, page 170, section 1, which, we apprehend, is applicable to this case, provides, that certain defenses may be made against tax deeds, and under it, a party can question the regu-

larity of such deed, for the causes therein enumerated, and for no other cause; but, before such other questions, not in said act named, can be litigated in any court in this State, he must pay to the claimant under the tax deed, or deposit in the court in which said suit is pending, for his (the claimant's) use, the amount of the redemption money, interest and costs, etc.

We apprehend, that it was intended by the act to apply the same rule to tax certificates, as well as to deeds. If it was not, then the act itself is a dead letter, as all can litigate tax titles, in the meantime, before deeds are given, and avoid the spirit and manifest design of the law. This is made, by the act, a condition precedent, and must be complied with. They must do equity before asking it. 1 Comstock R. 278.

V. The complainants even go farther than to simply ask that the tax certificates given to said Hogle and Willard be set aside, and held void, for the causes given in their bill, but ask, also, that the tax receipts given for taxes falling due since the time of the sale, be held void, and, also, set aside, as casting a cloud upon the complainants' title, etc., etc. The defendant Hogle, in good faith, purchased the land at the tax sale thereof, and became thereby liable to pay all subsequent taxes and assessments thereon. If he failed to pay such taxes, the lands were again liable to be sold. To say, then, that such payment of taxes of 1861, by said Hogle, was voluntarily done, and without compulsion, and without request, is simply to charge an absurdity. He was compelled to pay the taxes, or he himself lose the lands, and his purchase money paid at the tax sale previously. We insist that the complainants do equity before asking it. They must tender to the defendants the amount of the taxes paid as shown by said receipts, before they can come into a court of equity and ask it to cancel the same. It would certainly be doing the defendants great injustice to set aside their tax receipts, and would be inequitable unless the complainants first pay, or offer to pay, the amount thereof, and would be contrary to the law of 1861, before referred to. That the defendants

have an interest in the lands to the amount of the taxes paid at the purchase thereof, and also for the amount of the subsequent taxes, for which the defendant Hogle holds receipts from George King, there is and can be, we apprehend, no doubt. That interest cannot be divested until the complainants have first complied with the law in such cases, and refunded all moneys so paid thereon. Then, if the judgment is void, as claimed, (which we do not by any means admit,) the tax receipts are still a lien thereon, and create an equitable claim in the said lands.

We only ask that the old maxim, "He who seeks equity must do equity," be applied to this case.

VI. The complainants charge in their bill, that the judgment rendered by the County Court against the land is void. That being (if true as alleged) the case, it casts no cloud upon the complainants' title, and they have no relief in a court of equity.

On this point, see 26 Wend. R. 132; 9 Paige Ch. R. 16, 388; 2 Comstock R. 118; 2 Story's Equity Juris., sec. 700; 6 Peters' R. 95, 98, 99, 100.

VII. The complainants' bill of complaint entirely fails to show that the taxes assessed against the land had been, at any time, paid before the sale; or that said real estate was not subject to taxation; or that it had been redeemed from said sale; or that the notice required by the constitution was not given; or that the description of the said land was not sufficiently definite. But, on the contrary, it shows that the taxes assessed against the land had not been paid before the sale; that the said real estate was subject to taxation; that it had not been redeemed from said sale; that the description of the land was sufficiently definite; that a regular notice was, in due time, manner, and form, given, and published in the Iroquois Republican, a newspaper of general circulation; that a judgment was regularly applied for, and a regular judgment rendered; that a regular sale was made, and proper certificates given to the purchasers thereof; that the complainants failed to appeal from said judgment, or any part thereof, or make any attempt so to do; that if there is any equity in

the case, it is all in favor of the defendants. The bill itself further shows upon its face that the complainants have no equities or rights in a court of chancery.

Therefore, the demurrer filed in the court below was properly sustained by that court, and the plaintiffs' bill of complaint properly dismissed, and there was no error in so doing.

For the foregoing, among other good and sufficient reasons and causes, the decision of the Circuit Court should in all things be affirmed.

BREESE, J.    The question presented on this record was raised on a demurrer to the bill filed by the appellants against the appellees, in the Circuit Court of Iroquois county. The scope of the bill was to set aside and discharge a judgment rendered by the County Court against certain lands delinquent for the taxes of 1860, of which appellants and one of the appellees, Chamberlain, were tenants in common, on the ground of want of jurisdiction in the court to render the judgment at the term at which it was rendered; and also, to set aside the certificates of sale granted on the purchase of the same, and the tax receipt for the subsequent taxes paid by the purchaser for the year 1861, on those lands.

The substance of the complaint is, that the judgment against these lands was rendered at the July term, 1861, of the County Court, in pursuance of the notice of the collector, that he would apply at that term for a judgment, and that the tracts of land were not sold separately, or offered publicly to bidders, but that the collector, conducting the sale, permitted the appellants to select out of the list, these particular tracts of land, and sold the same to them for the taxes due upon them, to whom he granted the usual certificates of sale.

The averments in the bill on this point are, substantially, that the collector did not proceed to offer for sale, separately, each tract of land at public auction, as the statute requires, but, on the contrary, after the day appointed for the sale in the notice, the said tracts of land and each of them, together with a large portion of the lands in the delinquent list for that year, were, by the collector, continued from day

to day, and were not offered in their order, for sale, but the collector allowed Willard and Hogle to go before him and designate and select said tracts of land, and each of them, and request the sale thereof, and the collector then and there struck off and sold these pieces of land to said Willard and Hogle at their particular request, and for their benefit respectively, without regard to the order in which they were sold, and without regard to a fair competition in persons bidding upon the land; and thereby a fair competition in the bidding upon these tracts of land, and each of them, was prevented, contrary to the statute in such case made and provided.

Willard assigned his interest to Hogle in his certificate of purchase.

The bill also charges that Hogle and Chamberlain are fraudulently intending to perfect a title to these lands in Hogle by virtue of their certificates and judgment, and are intending that the deed which may be made in pursuance of the certificate shall enure to their joint benefit, in order to wrong and defraud complainants; and they complain that this judgment and tax certificate are an apparent lien upon these lands and a cloud upon their title.

This demurrer is equivalent to an allegation by the appellees, that, admitting the facts as stated in the bill to be true, they are insufficient to entitle the appellants to the relief they seek.

There are several claims to relief set up in the bill. First, that the judgment for taxes was void, being rendered at a term not appointed for that purpose. Second, that the conduct of the collector at the sale, in permitting the purchasers to select out these particular tracts on which to bid, there being no public offering, for competing bids, was illegal; and the fact that one of the appellees was a tenant in common with appellants in the lands, and confederating with his co-defendant to defraud the complainants of their rights in the same, was fraudulent in itself.

It is a rule in equity proceedings, where the bill sets forth various claims to the interposition of the court, and the

defendant files a general demurrer, the demurrer should be overruled, if any of the claims be proper for its jurisdiction ; and a demurrer to the whole of a bill containing some matters relievable, and others not, will be bad, unless it be for multifariousness.

If any substantial and essential part of a complaint is within the jurisdiction of a court of equity, a demurrer to the whole bill for want of jurisdiction, cannot be sustained, and when a charge of fraud is distinctly made in the bill, such charge ought to be met by an answer. By this demurrer it is admitted, and of itself might justify a decree as prayed for.

The facts being admitted by the demurrer, what is the law of the case ? It is contended by the parties, that the county of Iroquois was, at the time of the levy of the tax, the rendition of the judgment, and the sale of the land, acting under the township organization, and all the proceedings had in the premises, were under, and in virtue of the township organization law of this State. At the session of the General Assembly of 1861, an act was passed, entitled "An act to postpone the collection of the revenue for 1860." (Session Laws, 168.) Approved Feb. 14, 1861.

By the first section of this act, it is provided, in counties acting under township organization, that the time for the return by the township collectors of the warrants issued for the collection of taxes for the year 1860, shall be extended until the 15th day of April next ; and until that time, township collectors shall possess all the powers to enforce the payment and collection of taxes, which they could exercise before the return day of their respective warrants, by the laws in force at the time the warrants issued ; and in all such counties, the county treasurers shall apply for judgments against delinquent lands, at the June term of the County Court of their respective counties, and the publication of notices and forms of proceeding, in relation to obtaining judgment, and the sale of lands in pursuance thereof, shall be in all respects the same, except as to the change of time as above provided, as now required by law ; and county treasurers, in such counties, shall make final settlement with the auditor as now

required, on or before the 10th day of July next. This act had a limited effect and a temporary operation and existence only, not being designed to change the general law for the collection of the revenue, except for the year specified. Sec. 4, page 169.

The first position assumed by the defendants is, that this act is amendatory of former acts, as to the time of collecting taxes, making returns, etc., and is directory only, at the same time admitting, that under and by virtue of this act, taken by itself, applications for judgments against lands for delinquent taxes must be applied for at the June term. They insist, however, that in construing this statute, other statutes of which this is amendatory, are to be taken into consideration, and construed with it. It is a well established principle, that several acts, *in pari materia*, and relating to the same subject, are to be taken together, and considered in the construction of them, for the reason, that they are regarded as having one object in view, and as acting on one system. In doubtful cases, courts should compare all parts of a statute, and different statutes, *in pari materia*, to ascertain the intention of the legislature. But when a law is plain and unambiguous, the legislature must be intended to mean what they have plainly expressed, and in such case there is no room for construction.

The act of 1861 does not, by its title, purport to be an amendatory act, but it is expressly declared, in the act itself, that it shall not be deemed or taken to change the general revenue act. It was for a special purpose, to meet a special exigency, and must stand by itself, and be construed by itself. There are no ambiguous terms, or words of doubtful import in it, and, therefore, no room for construction.

Before the enactment of this law, the township collectors were required to return their warrants and make a settlement with the treasurer, on or before the 15th of February of each year; and all lands on which the taxes remained unpaid on the 15th of March, of each year, were declared delinquent, and were to be sold on the second Monday of May, on the judgment to be obtained at the May term. If, for any cause,

the County Court could not be held at the term at which notice was given that judgment would be demanded, then the cause stood continued until the next term, and judgment could be rendered at the term to which the cause was continued. It was to change this time, and this only, that the act of 1861 was passed, and therefore, to that extent, must stand by itself, no aid being derivable from any other act, because there is none other on the same subject, enacted for the same purpose.

It is clear that the only act in force, on this special subject—the collection of the revenue for 1860—is this act of eighteen hundred and sixty-one, so far as the time is concerned. That other provisions of the acts of 1853 and 1855, not affecting the time of returning delinquent lands, could be taken into consideration, in construing this act, may be doubted, as this is a special act for a special purpose.

We are inclined to think that notice of the application for a judgment, and the application itself, must be made to the June term, the language of the law being peremptory—"shall apply." The term is fixed by law, and the design is, that all persons owning lands in the county, looking to the law for their rights, may know, certainly, when the application will be made, and make such defense as the law entitles them to make, and show cause, if they can, why judgment should not be rendered against their lands. If this rested in the discretion of the collector, and the people interested are to derive their knowledge of the term at which the application will be made, solely from the collector's notice, much embarrassment and loss might occur, as those notices are not so widely diffused as the law itself. Besides, the same law requires that the county treasurers shall make their settlement with the auditor on or before the tenth of July, which would be impossible if the judgment was entered at the July term.

In *Spellman* v. *Curtenius*, 12 Ill. 409, this court said, to give the court jurisdiction it is essential that the collector should make a report, and give notice of the application for judgment, substantially as required by the statute.

The case of *Marsh* v. *Chesnut*, 14 Ill. 224, is strongly in

support of the view we have taken of this case. In that case the law made it the duty of the assessor to complete the assessment, and return it to the clerk of the County Commissioners' Court, on or before the first day of May, and it authorized parties interested, to apply at the ensuing June term of that court, for the purpose of having the valuation of their property reduced. This requisition of the statute, the court say, is clearly imperative. The courts have no power to declare it directory merely. Such a decision would virtually deprive a party of the protection which the legislature designed to afford him. This direction to the assessor was intended to be compulsory, and a failure by him to comply with it, renders the assessment invalid as against the owner of the land. The court further say, what has often been said, "It is a sound and inflexible rule of law, that when special proceedings are authorized by statute, by which the estate of one man may be divested, and transferred to another, every material provision of the statute must be complied with. The owner has a right to insist upon a strict performance of all the material requirements, especially of those designed for his security, and the non-observance of which, may operate to his prejudice. On this principle alone, the direction to the assessor to make his return by a given day is compulsory, and its performance is indispensable to the validity of the assessment."

If then it was compulsory on the collector to made his return to the June term, an application at any other term would not suffice, and as nothing can be intended in favor of such proceedings, it would seem to follow, that the County Court at the July term had no jurisdiction of this application, the notice not having been given to the June term, and the judgment rendered thereon would be void and impeachable, collaterally, in any action.

We have been referred to several cases by the defendants' counsel, as supporting his view, that the act is directory only, the strongest of which we will notice. It is the case of *The People* v. *Allen*, 6 Wend. 486. The militia law of New York made it the duty of the commanding officer of a brigade, to appoint a brigade court martial on or before the first day of

June in each year.   The question presented was, could this power be exercised after the first day of June?   The court in the decision of this question laid down the general rule to be, that when a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered as directory, unless the nature of the act to be performed, or the language used by the legislature, show that the designation of time was intended as a limitation of the power of the officer.   In this case there was nothing in the nature of the power showing that it might not be as effectually exercised after the limit of June as before; and as the act giving it contained no prohibition to exercise it after that period, the re-naming of that day was a mere direction to the officer in relation to the manner of executing his duty; there was nothing in the nature of the power given, or in the manner of giving it, that justified the inference that the time was mentioned as a limitation.   The ground on which this decision is placed, and so in the other cases cited, is quite different, we think, from that on which this should be placed.   Here there is something in the nature of the power given to the collector, rendering it necessary he should consider the law peremptory.   Persons interested had a right to know, to a certainty, at what particular time they would be called on to make objection to the judgment, and thus save costs and loss.   The county treasurers were required to make their final settlement with the auditor on or before the tenth of July, which they could not, by any possibility do, if the application were made at the July term.   These are sufficient considerations, coupled with the language used by the legislature, for holding the law peremptory as to the term of the court.

We think the correct principle is, that when the objects contemplated by the legislature cannot be carried into effect by any other construction, then the time prescribed should be considered as imperative.   The objects of this act were, to give the owners of land time in which to pay their taxes, or rather, to give to the collectors further time to make collections, the owners being notified by the act, of the time at which judg-

ment would be applied for against the delinquent lands, and to give the county treasurers time to make their final settlement with the auditor by a certain day, neither of which objects could be accomplished without holding this direction of the act to be peremptory.

It is upon this principle the case of *Marsh* v. *Chesnut*, *supra*, was decided, and also the case of the *Thames Manufacturing Company* v. *Lathrop*, 7 Conn. 555, to which the court referred with approbation.

This opinion has no application to the provisions of the general revenue law, but to this special act only. If, however, these views are not correct, then the judgment would be binding and conclusive until reversed, and no relief could be had in chancery, but the sale under the judgment is open to the scrutiny of this court, by this bill, on the ground of the fraudulent proceedings of the collector, and these defendants.

They admit the charge as made, that they did select out these lands from the delinquent list, and, without any public bidding, were permitted to purchase them for the taxes due upon them, and that the defendant, Chamberlain, was a tenant in common with the complainants in the land, and was colluding with the other defendant, Hogle, to get the title in themselves in fraud of the rights of complainants. We have no hesitation in saying that it is a fraud for one tenant in common to permit the land held in common with others, to be sold for taxes, and he himself become the purchaser for his own exclusive benefit. It was a fraud also in making the sale as admitted.

By the law, it is made the duty of the treasurer to attend at the court-house on the day specified in the notice for the sale of delinquent lands, and there proceed, between certain hours, to offer for sale, separately, each tract of land in the delinquent list. The person at such sale offering to pay the taxes and costs charged on each tract or lot for the least quantity thereof, shall be the purchaser of such quantity, which shall be taken from the east side of such tract. It was evidently the design of the legislature, by these requirements, that the treasurer should sell the delinquent lands publicly,

Brown et al. *v.* Hogle et al.

selling no more than should suffice to pay the taxes and costs, and for this purpose a fair competition should be allowed, in nowise restricted, the object being, not to injure the owner by depriving him of his land, but to get the taxes and costs at the least possible loss to the owner. The object of the notice of the sale, is to invite bidders and excite competition. It is admitted that the sale was not conducted according to the statute, but that the purchasers, Willard and Hogle, were permitted to select out these particular tracts of land, and become the purchasers of the whole, for the trifling sum for which they were incumbered. This is contrary to equity and good conscience, and a fraud upon the rights of the complainants.

The certificates of sale and purchase held by the defendant Hogle, being fair on their face, will entitle him to a deed, when the time arrives, which might operate injuriously to the complainants, by clouding their title to the land, and drive them to the necessity of redeeming the land, before they can be in a position to question the validity of such deed, and the validity of the judgment and sale, in any suit at law. The defendant Hogle, therefore, will be required to surrender the certificates of sale of these tracts of land for cancellation, and will be enjoined from asserting any right under them, or either of them, to a deed for the said lands. The taxes he has paid for 1861 were paid by him voluntarily, and he has no claim on the complainants to be reimbursed, he being an active party to the illegal proceedings under which he acquired the certificates of sale, and placed himself, knowingly, in his present position. The decree dismissing the bill is reversed, and the cause remanded, with leave to put in an answer.

*Decree reversed.*