MARY A. BARNES & another vs. THOMAS D. BOARDMAN
& others.

Essex.   November 9, 1888. — May 9, 1889.

Present: MORTON, C. J., FIELD, DEVENS, C. ALLEN, & KNOWLTON, JJ.

*Devise — Sale for Taxes — Assignment of Mortgage — Words of
Inheritance — Authority of Agent.*

A testator gave to his wife absolutely, in the first clause of his will, " my dwelling-
house as now stands, together with all the land, furniture," and other personal
property, and in the last clause, " all the rest, residue, and remainder of my
personal and real estate, goods and chattels, . . . during her life," and ap-
pended to the will were the words, referring to the last clause, " during her
life only, — my will and desire." *Held*, that the wife took the dwelling-house
and the land connected with it in fee, but had a life estate only in the rest of
the testator's real estate.

A collector's sale of several distinct and separate lots of land for the non-payment
of taxes was *held* to be for one integral price, and therefore void.

If a mortgagee of land, by a single instrument duly executed under seal and
acknowledged, makes an absolute assignment of the mortgage debt and of the
mortgage, such assignment is sufficient to vest in the assignee the full legal
title of the mortgagee to the mortgaged premises, although no words of inherit-
ance are used.

The authority of an agent to act for the assignee of a mortgage in making an
entry for the purpose of foreclosure was *held* to be sufficiently shown.

PETITION for partition of four parcels of land on Howard
Street and Hampshire Street, formerly North Oak Street, in
Lawrence. The case was submitted to the Superior Court, and,
after judgment for the respondents, to this court, on appeal, on
an agreed statement of facts, in substance as follows.

The petitioners were the children and heirs at law of Charles
W. Boardman, a son of Benjamin G. Boardman, senior; and
the respondents were the legal representatives of Benjamin G.
Boardman, junior, of Edwin A. Boardman and of Moses B.
Boardman, the remaining sons of Benjamin G. Boardman,
senior, of whom only the children and heirs at law of Ben-
jamin G. Boardman, junior, resisted partition.

Benjamin G. Boardman, senior, died on March 10, 1858, leav-
ing a widow, Sarah W. Boardman, who was his second wife,
and the four sons above mentioned, who were his children by

his first wife. His will, which was duly admitted to probate, contained the following provisions : -

" Firstly, I give to my wife, Sarah, my dwelling-house as now stands, together with all the land, furniture, silver plate, spoons, notes, mortgages with the notes to the same, my books, papers, etc., chattels, at the time of my decease." Here followed a small appropriation to keep the testator's burial lot in order, and various legacies to his four sons. " My will and desire is, if my wife, Sarah, should be married again, and not remain my widow, that my real and personal estate shall revert to my heirs at law. My will is, that my wife, the executrix, shall from time to time present as gifts from me, and through her, to my grandchildren, as her judgment may dictate; also to my sons, as her pleasure may dictate. I submit all to her own judgment, and confide in her to make any small presents. My estate can be closed without much expense, as no appraisement will be made. And lastly, as to all the rest, residue and remainder of my personal and real estate, goods and chattels, of what kind and nature soever, I give and bequeath the same to my said wife, Sarah, during her life only, whom I hereby appoint sole executrix of this my last will and testament. The words ' estate ' and ' real ' interlined by me before signed. My desire to your Hon. that you request no bondsman from my wife, as no mistake in the trust and discharge of her duty. Benjamin Greenleaf Boardman.

" In witness whereof, I have hereunto set my hand and seal, and publish and declare this to be my last will and testament, in the presence of the witnesses named below, this nineteenth day of July, in the year of our Lord one thousand eight hundred and fifty-two. Benjamin Greenleaf Boardman.

" Before signed, during her life only, — my will and desire."

Here followed the usual attestation clause, duly signed by three witnesses, and a codicil of later date diminishing the legacy to his son Charles W. Boardman.

Benjamin G. Boardman, senior, at the time of his death, owned a dwelling-house on Ashland Street, in Boston, and land on other streets in that city, as well as in Lawrence. Three of the parcels of land in question, being those situated on Howard Street in Lawrence, were owned by him at that time ; but his ownership of the fourth parcel, which was situated on Hamp-

shire Street, formerly North Oak Street, was controverted by the respondents. Sarah W. Boardman, who died on March 2, 1884, conveyed to Benjamin G. Boardman, junior, the dwelling-house in Boston, and " also all interest, if any, in real estate in State of Massachusetts, city of Boston or county of Suffolk," but made no other conveyance of the lands in question.

In 1857 the parcels of land on Howard Street, consisting of three distinct and separate lots, were collectively designated on the books of the assessors of taxes of the city of Lawrence as " Lot No. 10 Howard Street," solely with reference to certain plans of the assessors, and as being all of them situated on that street; and the fourth parcel, composed of two adjoining lots on North Oak Street, afterwards called Hampshire Street, were designated as " Lots No. 112 and 113 North Oak Street." On May 1, 1857, taxes were assessed to Benjamin G. Boardman, senior, upon these four parcels of land among others, those upon the three lots on Howard Street being separately assessed to him, and those upon the two lots on North Oak Street being assessed together. The taxes were duly committed to the collector of taxes of Lawrence for collection, and remained unpaid. Subsequently, the collector duly published a notice, dated May 28, 1859, and signed by him as collector, which notice was as follows :

" The owners and occupants of the following described parcels of real estate, situated in the city of Lawrence, in the county of Essex and Commonwealth of Massachusetts, are hereby notified that the taxes thereon severally assessed for the different years specified, according to the list committed to me as collector of taxes for said city by the assessors of taxes, remain unpaid, and that said parcels of real estate will be offered for sale at public auction on Saturday, the sixteenth day of July next, at ten o'clock in the forenoon, at the City Hall in said Lawrence, for the payment of said taxes, together with all the costs and charges thereon, unless the same shall be previously discharged."

Appended to this notice, under the heading " Non-residents," was the following: " Boardman, Benj. G., Boston, Lot No. 10 Howard Street, tax for 1857, $6.15 ; Lots No. 112 and 113 North Oak Street, tax for 1857, $0.48 "; and an affidavit of one Dike, that between May 28, 1859, and July 16, 1859, he posted a copy

of the notice upon each of the lots, as well as in the City Hall, at least three weeks before the day of sale.

The sale by the collector occurred at the time and place stated in the above notice, and was by public auction, and the lots in question were struck off to Benjamin G. Boardman, junior, as the highest bidder therefor, and subsequently the collector gave to him a deed, dated July 19, 1859, duly signed, sealed, and acknowledged by the collector, and duly recorded, which deed, so far as material, was as follows:

" Whereas the assessors of the city of Lawrence have assessed the sum of six dollars and fifteen cents on Lot No. 10 Howard Street, the sum of forty-eight cents on Lots No. 112 and No. 113 North Oak Street, . . . against Benjamin G. Boardman of Boston, as being the owner in possession on the first day of May, A. D. 1857, of said lots of land, situated in said Lawrence, for a tax in said city of Lawrence, in the lists of assessments they have committed to me to collect, and no person having appeared to discharge the same, although I have fully complied with all the provisions of the law respecting the sale of real estate for taxes assessed thereon and unpaid, therefore know ye, that I, the said Nathaniel Wilson, collector of taxes as aforesaid, in consideration of nineteen dollars and thirteen cents to me paid for the discharging of said taxes and intervening charges by Benjamin G. Boardman of Boston, in the county of Suffolk, in said Commonwealth, (late of the firm of Dennie and Boardman,) the receipt whereof I do hereby acknowledge, do hereby give, grant, bargain, sell, and convey unto him, the said Benjamin G. Boardman, his heirs and assigns forever, the following described real estate, being the land taxed as aforesaid, to wit, all those certain lots of land in said Lawrence, as above named, to wit, Lot No. 10 Howard Street, Lots No. 112 and 113 Oak Street, . . . said lots being so known and designated on the city assessors' plan of lands in said Lawrence; no person appearing to take a less quantity of said lots for said taxes and charges. An advertisement for the sale of which for the non-payment of said tax and incidental charges I caused to be published three weeks successively in " certain newspapers, " all published in said Lawrence, the last publication being more than one week before the day of sale; also, a notice of the time, place, and cause of said sale of said real

estate was posted at the City Hall and other public places in said city, and also upon the real estate, three weeks before said day of sale, the same having been struck off to the said Benjamin G. Boardman, he being the highest bidder therefor, at a public auction, legally notified and held at the City Hall in said Lawrence, July 16, A. D. 1859. To have and to hold the same to the said Benjamin G. Boardman, his heirs and assigns forever, to his and their use forever, subject however to the right of redemption of the owner or proprietor thereof, according to law. And I do covenant with the said Benjamin G. Boardman, his heirs and assigns, that I gave notice of the intended sale of said land according to law, and that I have observed the directions of the law in all respects in the premises, in reference to advertising, posting, selling, and conveying the premises aforesaid. In witness whereof, I have hereunto set my hand and seal, this nineteenth day of July, A. D. 1859."

There was no other evidence as to the manner and form of the tax sale except as above stated and contained in the tax deed and notice of sale.

Prior to 1848 the fourth parcel of land, referred to as " Lots 112 and 113 on North Oak Street," was mortgaged by one Foley, who then owned it, to Joseph Gass, and on February 26, 1848, Gass delivered to Benjamin G. Boardman, senior, an instrument signed by him, and duly sealed, attested, acknowledged, and recorded in the registry of deeds, which instrument is as follows:

" Know all men by these presents, that I, Joseph Gass, within named, for and in consideration of the sum of ninety-six dollars paid me by Benjamin G. Boardman of said Boston, hereby transfer and assign to the said Boardman all the right, title, and interest which I have to the land described in the within deed of mortgage, and also all my right and title to the debt described therein. In witness whereof, I have hereunto set my hand and seal, this twenty-sixth day of February, A. D. 1848."

The records of the registry of deeds for the Southern District of the County of Essex also contained, as duly recorded, the following, signed and sworn to by two witnesses:

" This is to certify that Chas. S. Newell, attorney for Benjamin G. Boardman, the assignee within named, has this day

called upon us to witness his entry upon the premises described in the within mortgage, and he made entry thereon in our presence, and declared that he did it in the name and as the attorney of the within named Benjamin G. Boardman, for the purpose of foreclosing the within mortgage according to the statute, and for breach of condition thereof, this eighteenth day of October, in the year one thousand eight hundred and forty-nine."

The respondents contended that the assignment from Gass to Boardman conveyed only a life estate; that the certificate of entry did not state the facts required by the statute, and was insufficient to foreclose the mortgage, and that Newell was not authorized to make said entry; that the will of Benjamin G. Boardman, senior, devised to Sarah W. Boardman an estate in fee, and that the said petitioners did not inherit any portion of the real estate; that the tax deed was valid, and vested in Benjamin G. Boardman, junior, an estate in fee; and that the petitioners' remedy, if any, was in equity as cotenants.

The petitioners contended that Benjamin G. Boardman, senior, owned the premises at the time of his death; that the respondents were estopped from denying that he owned them at the time they were sold for taxes assessed to him as the owner in possession; that the assignment was sufficient to vest the mortgage deed and note in him; that the certificate conformed to the requirements of the statutes, and the mortgage was foreclosed thereby; that the lapse of time since the entry to foreclose, the acquiescence of all parties, the presumption of regularity in favor of ancient proceedings, the fact that the certificate was indorsed on the back of the deed and its subsequent record, justified and required a finding and ruling that Newell was the lawful attorney of Benjamin G. Boardman, senior, to make said entry; that the children of Benjamin G. Boardman, senior, were tenants in common and joint devisees of the premises under his will, subject to a life estate in the widow, whereby their relations were of a fiduciary character, not allowing one of them stealthily to deprive the others of their title by secretly acquiring an adverse title; that, if the tax sale and deed were valid, the respondents can avail themselves of the same only to require contribution, and that partition can be decreed in this case upon condition that such contribution shall be made; that

the assessment, notice, sale, and deed were illegal and void; and that the petitioners were entitled to partition.

If upon the foregoing facts partition could be had, interlocutory judgment for partition was to be entered therefor; otherwise, judgment was to be entered for the contesting respondents.

C. U. *Bell*, (*A. D. Bosson* with him,) for the respondents.

B. B. *Jones*, for the petitioners.

C. ALLEN, J.   1. The respondents contend that the testator left all of his land to his widow, absolutely; and if this is so, the title of the petitioners to the lands of which partition is sought wholly fails.   But such is not the true construction of the will. The two clauses most material to be considered are the following, one of which is near the beginning, and the other near the end of his will: " Firstly, I give to my wife, Sarah, my dwelling-house as now stands, together with all the land, furniture, silver plate, spoons, notes, mortgages with the notes to the same, my books, papers, etc., chattels, at the time of my decease. . . . Lastly as to all the rest, residue and remainder of my personal and real estate, goods and chattels, of what kind and nature soever, I give and bequeath the same to my said wife, Sarah, during her life only."   And appended to the will are the words, with reference to the latter clause, "during her life only, — my will and desire."   The testator owned the dwelling-house and other real estate.   The words, "together with all the land," in the first clause, obviously mean all the land connected with or belonging to the dwelling-house.   The two clauses stand perfectly well together.   The first gives to her in fee the dwelling-house and the land connected therewith; the latter clause gives the other real estate to her for life, and leaves the remainder undisposed of.   It follows that the petitioners are not cut off from maintaining their petition by anything contained in the will.

2. As to three lots of land described in the petition, the same being a portion of a larger lot known as No. 10 Howard Street, the respondents admit that they were owned by the testator at his decease, and that the petitioners are entitled to partition thereof, unless their title was devested by a sale for taxes to Benjamin G. Boardman, junior, the father of the respondents.   The taxes were assessed in 1857, and the sale was made in 1859.

The assessments were made upon each of the three lots separately; but the petitioners contend that the sale was of the three lots together, for one integral sum. The respondents do not deny that the tax title was void if the sale was made in that manner, (*Hayden* v. *Foster*, 13 Pick. 492,) but contend that it does not appear that the sale was so made.

Owing to the lapse of time and other causes, it was found impossible to produce other evidence than what may be gathered from the collector's notice or advertisement and his deed. Upon examination of these, it appears to us that the three lots were sold together for one integral sum. The notice shows nothing either way, being consistent with either mode of sale. The deed recites but one sum as the consideration money paid "for the discharging of said taxes and intervening charges"; it also says, " no person appearing to take a less quantity of said lots for said taxes and charges," as if the lots, taxes, and charges all went together; it adds, " an advertisement for the sale of which for the non-payment of said tax and incidental charges I caused to be published," etc., as if the taxes on the several lots were all treated as one tax. "The sale" is also referred to three times in the singular number. We find nothing whatever to show that the lots were sold separately, unless it be the recital of the several assessments, and the covenant of the collector that he observed the directions of the law; but these are insufficient to outweigh the indications found elsewhere in the deed. We are therefore of opinion that the tax sale was void, and that the petitioners are entitled to partition of the three lots therein embraced; and this renders it unnecessary to consider the question, which has been argued, whether the respondents can avail themselves of a title so obtained by Benjamin G. Boardman, Jr., who was a tenant in common with Charles W. Boardman, under whom the petitioners claim.

3. In reference to certain other lots whereof partition is sought, namely, the two lots on North Oak Street, as it was formerly called, the respondents contend that the title thereto of Benjamin G. Boardman, senior, failed, so that none of the parties to the present proceedings appear to have any title, and that therefore the petitioners cannot maintain the petition for partition of the same. The title of said Boardman was derived as follows.

A former owner made a mortgage of the premises to Joseph Gass, who, on February 26, 1848, by an instrument under seal and subsequently acknowledged and recorded, assigned to said Boardman " all the right, title, and interest which I have to the land described in the within deed of mortgage, and also all my right and title to the debt described therein." From the words used, it would seem that this assignment was written upon the mortgage. The records in the registry of deeds contained a certificate that Charles T. Newell, attorney for Benjamin G. Boardman, the assignee of the mortgage, made an entry to foreclose the same on the 18th of October, 1848. The respondents object that the assignment of the mortgage conveyed to Boardman only a life estate in the mortgage and in the premises therein described ; that the certificate did not state facts necessary to a foreclosure; and that no authority in Newell was shown, and none could be presumed, because it did not appear that possession had followed foreclosure. But none of these objections can avail.

The general rule is familiar, that an assignment or transfer of a mortgage debt carries with it an equitable right to an assignment of the mortgage. *Sturtevant* v. *Jaques*, 14 Allen, 523. *Morris* v. *Bacon*, 123 Mass. 58. *Batesville Institute* v. *Kauffman*, 18 Wall. 151. *Carpenter* v. *Longan*, 16 Wall. 271. In some jurisdictions it is held that the mere transfer of the debt, without any assignment or even mention of the mortgage, carries the mortgage with it, so as to enable the assignee to assert his title in an action at law. 2 Washb. Real Prop. (3d ed.) 114, 118, and cases there cited. This doctrine has not prevailed in Massachusetts, and the tendency of the decisions here has been, that in such cases the mortgagee would hold the legal title in trust for the purchaser of the debt, and that the latter might obtain a conveyance by a bill in equity. *Wolcott* v. *Winchester*, 15 Gray, 461, 464. *Young* v. *Miller*, 6 Gray, 152. But a payment of the debt at or before its maturity devests the mortgagee of his legal estate, and the mortgagor is then in of his old estate, without any release and without any process for redemption ; *Holman* v. *Bailey*, 3 Met. 55; and, under our system of foreclosing mortgages, a payment of the debt after its maturity has nearly or quite the same effect. Nothing being thereafter due to the mort-

gagee, he could obtain no conditional judgment in an action to foreclose, and therefore cannot maintain a writ of entry to foreclose, or entry for breach of condition. Accordingly, upon such payment the mortgagor can assert his title at law against a tenant of the mortgagee, and need not resort to equity. *Baker* v. *Gavitt*, 128 Mass. 93.

No case has been cited, and we have found none, where the effect of an assignment like that of Gass to Boardman has been considered. But it is plain that after making it Gass retained no title which he could assert in any form of proceeding. The whole beneficial interest was in Boardman. The utmost that could be considered as remaining in Gass was a bare technical title in the reversion after Boardman's death; and this it would have been his duty at any time upon request to convey to Boardman, without any further payment, or any terms or conditions whatsoever. There can be no doubt that the assignment was intended to convey the whole title of Gass. Under it Boardman had a right to demand and receive payment in full of the mortgage debt, for his sole use. By the bare act of payment of the mortgage debt to Boardman, the mortgagor would have regained title, as already shown, and the title of both Gass and Boardman would have been cut off. By a failure to make payment to Boardman within three years after an entry by him to foreclose, the right of the mortgagor to redeem the premises would be cut off. The assignment was under seal, and was duly executed and acknowledged; it included an absolute title to the mortgage debt, and we see no sufficient reason for holding that it did not also carry the whole title of Gass to the mortgaged premises, although it did not in terms run to Boardman's heirs. It is more in consonance with the true relations of the parties, and with substantial justice, to hold that when a mortgagee of land, by a single instrument duly executed under seal and acknowledged, makes an absolute assignment of his mortgage debt and of the mortgage, such assignment is sufficient to vest in the assignee the full legal title of the mortgagee to the mortgaged premises, although no words of inheritance are used.

No particulars have been specified in respect to which the certificate of entry by Newell was insufficient, except that it did not show his authority to act for Boardman. Such authority,

after this lapse of time, may be inferred from slight circumstances. Newell assumed to act for Boardman in making the entry; he had the mortgage in his possession, as is shown by the certificate upon it of his entry; taxes upon the lots were assessed to Boardman in 1857; and it was admitted as a fact, that Boardman owned the lots in fee at the time of his death, unless the respondents' objections to the assignment and certificate are valid. It is no more than a fair inference, that he claimed to be the owner. Moreover, the respondents themselves claim title to these lots, as well as to those on Howard Street, as their father did before them, under the sale for the tax thereon assessed to Boardman. The facts and circumstances sufficiently show Newell's authority in making the entry to foreclose.

The result is, that the petitioners are entitled to partition of all the lots embraced in their petition.            *So ordered.*