## COCKS *v.* SIMMONS.

Decided November 14, 1891.

1. *Co-tenant—Adverse possession.*

Proof that a co-tenant placed upon record a tax deed of the entire premises executed to himself alone, without proof that his co-tenants knew of it or that he claimed to hold under it, would not establish a holding adverse to their rights.

2. *Tax sale.*

A tax deed which recites the sale, in a body and for a gross sum, of several sections of land severally assessed is void.

3. *Tax sale—Purchase by co-tenant.*

A tenant in common of lands can acquire no title to the interest of his co-tenant by purchase at a sale of the whole for delinquent taxes.

4. *Tax sale—Description.*

Where part of a tract of land is sold for the taxes due upon the whole, it is sufficiently described as so many acres from a given corner of the legal subdivision.

5.  *Deed—Construction.*

A grantor who owns an undivided four-fifths interest in certain land and conveys with covenants of general warranty "a full half interest in all the right, title and interest in and to" the land, conveys an undivided half interest in the land, and not in his interest.

6.  *Co-tenant—Taxes—Contribution.*

A tenant in common is entitled to contribution from his co-tenants for the taxes paid by him for which their interest was bound.

APPEAL from *Monroe* Circuit Court in chancery.

MATTHEW T. SANDERS, Judge.

In 1887 Seth C. Cocks and Blanch D. Lyles, heirs of Philip A. Cocks, who died in 1869, brought suit against Miles A. Simmons to remove a cloud upon their title to an undivided half interest in four-fifths of four sections of land in Monroe county. The complaint in substance alleges that in 1860 their ancestor, owning an undivided four-fifths interest in the land, sold one-half of his interest to defendant; that subsequently defendant purchased from the owner the outstanding undivided fifth interest in the land, making him owner of an undivided three-fifths interest; that the land is wild and unoccupied, and has never been partitioned; that defendant claims title to plaintiffs' interest under a tax deed executed in 1869, in pursuance of a sale in 1868 for the taxes of 1866 and 1867, which was void by reason of certain irregularities mentioned; that defendant is a non-resident, having no agent in the State to whom a tender of taxes paid by him could be made, but they now offer to pay the same into the court. Prayer was for cancellation of the tax title and for partition of the land.

The answer alleges that defendant bought of Philip A. Cocks an undivided half of the whole tract, which, with the other one-fifth afterwards acquired, made three and a half undivided fifths; that the taxes on Cocks' undivided four-fifths interest for the year 1860 had not been paid, and part of his land was sold for the taxes of that year, due upon the whole of the land, and in 1862 the defendant bought the certificate of purchase, and in 1866 procured a deed; that afterwards he obtained a confirmation of said tax title of

1866; denies any irregularities in the tax title of 1869 mentioned in the complaint, and alleges that the land was sold in separate tracts, but for convenience the whole was included in one deed; alleges that the plaintiffs had abandoned the lands, and that defendant had put in cultivation twenty-five or thirty acres, and built twenty houses on it; that he has been in actual possession since 1869; denies that he had no agent to receive tender, but states that he has an agent, but does not say who he is. Defendant also pleads the statute of limitation of seven years, and the failure to make tender of the taxes due, as required by the statute.

Plaintiffs filed an amendment to the complaint, which alleges that the tax sale of March 11, 1861, was void because the State had passed the ordinance of secession ; because the property bought was not surveyed and marked; and because defendant, being a tenant in common, could not buy their interest at a tax sale. They also charge that defendant has taken off large quantities of timber which he has sold and converted to his own use, and has received rents from the cleared lands on the tract, and that these items are properly chargeable in excess of the amount due him in taxes.

The deed from Philip A. Cocks to defendant, dated September 27, 1860, conveyed, with covenants of warranty, " a full half interest in all the right, title and interest in and to " (the four sections of land described), " containing (2560) two thousand five hundred and sixty acres, more or less ; to have and to hold the said full half interest in all the right, title and interest in and to said lands to him the said M. A. Simmons, his heirs and assigns, forever."

From the tax deed of 1866 it appears that an undivided four-fifths of the land described was delinquent for the taxes of 1861. The land was sold by quarter sections, reserving the undivided one-fifth upon which the taxes had been paid, where, as in some instances, a portion only of an undivided four-fifths of a quarter section was sold for the taxes due upon the entire four-fifths, it was described as so many acres

off the southeast corner of an undivided four-fifths interest in the particular quarter section. The certificates of purchase having been assigned to defendant, the tax deed was executed to him. In 1867 defendant filed his petition in the chancery court and obtained a decree confirming his title to the lands so purchased. In the description of the lands, however, there were certain discrepancies between the tax deed and the decree of confirmation, lands included in the former being omitted in the latter. It was insisted in the argument that this court should consider the decree as amended to conform to the deed. The second tax deed to defendant, executed in 1869, recited that the entire four sections of land were delinquent for the taxes of the years 1866 and 1867, and that they were sold in a block to P. O. Thweat, who assigned his certificate of purchase to defendant. At the hearing the court dismissed the complaint for want of equity, from which decree the plaintiffs appealed.

*O. P. Lyles* for appellant.

The parts bought at tax sale were never surveyed and marked. Gould's Dig., Ch. 148, sec. 125; 34 Ark., 534. The timber taken and rents collected were sufficient to pay all taxes and improvements. Mansf. Dig., sec. 5072. The bill does not seek possession, nor to try title; it is simply a bill for partition and to redeem, and the act of 1857, called "An act to quiet titles," does not apply. 41 Ark., 149; Blackwell on Tax Titles, 66, 116. The deed is void on its face, as it shows that the land was sold in a body. 31 Ark., 491; *ib.*, 315; 30 *id.*, 579. A tenant in common cannot acquire title by tax deed to his co-tenant's land. 40 Ark., 42. If the tax deed was void, no tender was necessary. 43 Ark., 406. Defendant cannot question the recitals in his deeds. 29 Ark., 489.

*W. G. Weatherford* for appellee.

1. Appellants are barred by limitation. There was actual adverse holding, under deed of record, for more than eighteen years, during four of which appellants were free from disability. 52 Ark., 168; 46 *id.*, 25. No disability

occurring after the right of action accrued is available. Mansf. Dig., sec. 4501 ; 24 Ark., 556. Cumulative disabilities and stale demands are not allowed. 39 Ark., 163. Adverse possession, once proven, is presumed to continue. 34 Ark., 602 ; 38 *id.*, 193.

2. It is an open question whether a co-tenant can purchase his co-tenant's share in land. 40 Ark., 42 ; Black on Tax Titles, sec. 141 ; Blackwell, Tax Tit., 283 ; 18 Ark., 441 ; 20 *id.*, 381. In this case a third party purchased, and, after right of redemption expired, he assigned to defendant. 37 Ark., 201.

3. Failure of assessor to take oath not material. 52 Ark., 358 ; 43 *id.*, 248. Nor that assessment roll was returned unsworn to. 46 Ark., 104.

4. All irregularities and illegalities were cured by our statute. 46 Ark., 107. The limitation began with the *sale*. A *void* patent is sufficient to give color of title. 34 Ark., 547.

5. A tenant in common can hold adversely to his cotenant. 7 Wheat., 59; Angell on Lim., sec. 429; 20 Ark., 375, 557 ; 42 Ark., 289.

6. No tender was made. 21 Ark., 319; 20 *id.*, 17; 17 *id.*, 199; 23 *id.*, 644 ; 41 *id.*, 149; Mansf. Dig., secs. 2649–50.

7. Defendant began to hold openly under his deed at the time of its execution and recording in March, 1869, and if it were absolutely void, plaintiffs are barred. 21 Ark., 370; 20 *id.*, 542; *ib.*, 508; 34 *id.*, 547 ; 13 How., 472. Seven years, three of which are free of disability, constitute a bar. Mansf. Dig., sec. 4471 ; 44 Ark., 480; 41 *id.*, 53.

8. There never was any *fraudulent concealment*, and hence no resulting trust arose; and after so great a lapse of time courts of equity hesitate to decree the execution of an express trust. 41 Ark., 301 ; 21 *id.*, 9 ; *ib.*, 379.

9. Confirmation cuts off all defenses, except jurisdictional ones. 42 Ark., 344 ; 52 *id.*, 402.

10. The deed from plaintiffs' ancestor conveyed a half interest in the whole land. 28 Ark., 150, 282.

HEMINGWAY, J. This was a bill on the part of tenants in common to set aside tax deeds under which their co-tenant claimed land in severalty, and for partition between them. The defendant relied upon a tax deed and a decree confirming the same as to a part of the land, and upon a subsequent tax deed and the statute of limitations as to all of it. If the defense upon either of the latter grounds be sustained, it dispenses with the consideration of the former; and we proceed to consider them. There are two adequate objections to the plea of limitation.

. In the first place, there is no proof that the defendant ever held the actual possession of the land; and in the second place, if he had such possession, it would be construed as the common possession of all the co-tenants until he did some act of ouster to notify the others that his possession was exclusive. 33 Cent. L. J., 296; Freeman, Co-tenancy and Partition, sec. 373 *et seq.;* Angell on Lim., sec. 420. There is not only no evidence of the defendant's exclusive possession, but there is no proof that he openly asserted any exclusive right; neither is shown by proof that he placed upon record a tax deed taken to himself alone—without proof that his co-tenants knew of it, or that they knew he claimed to hold under it.

1. When possession of co-tenant not adverse.

The title asserted under the deed itself is of as little avail. By the recitals of the deed four sections of land severally assessed were sold in a body for the sum of the taxes due upon all. Each section was thereby sold for the taxes due upon each of the others as much for the taxes due upon it. Such a sale is absolutely void, for the collector has no more authority to sell one tract of land for a tax due upon another than for a store account or other ordinary debt. It is said in the argument that although the deed recites a sale in a body for separate taxes, in fact the tracts were sold separately for the taxes due upon each, and that the deed should be corrected to conform to the facts. Two conditions indispensable to a grant of such relief are wanting—pleading and proof to justify it.

2. Tax sale of several tracts in a body.

**3. Effect of purchase at tax sale by co-tenant.**  Against the former tax sale, which covered only a part of the land, it is urged that the sale was void because it was made to a tenant in common, whose attempted purchase amounted to no more than the payment of the taxes. As the interests of the co-tenants were assessed, taxed and sold together, the sale was occasioned alike by the default of each party. Whether either might have paid his *pro rata* of the tax and upon the sale of the other's undivided interest purchased it, is a question not presented nor considered. For as the defendant did not pay his part of the tax, but suffered default as to it, and made it necessary that his interest be sold with that of the plaintiff, his purchase amounted to nothing more than the payment of the tax, and gave him no right except to demand contribution from his co-tenant. The authorities upon the subject are too numerous for reference, but we adopt the views of the Supreme Court of Michigan, as expressed in *Page* v. *Webster*, 8 Mich., 263; see *Maul* v. *Rider*, 51 Penn. St., 377; Freeman on Co-tenancy and Partition, sec. 158; Cooley on Taxation, p. 500; *Brown* v. *Hogle*, 30 Ill., 119; *Moore* v. *Woodall*, 40 Ark., 42.

**4. Tax sale—Description.**  The complaint does not question the jurisdiction of the court in the proceedings to confirm the tax title, or assail the decree of confirmation for fraud or upon any other recognized ground. It is therefore binding upon the plaintiffs though erroneous upon the facts, and the injustice that it does adds but one more instance of injustice to property owners flowing from decrees rendered upon constructive service. The legislature seems to have thought that the public policy subserved by such proceedings outweighed the wrongs done to individuals, and we cannot review its judgment or avert consequent hardships. The plaintiffs are entitled to no interest in the lands embraced in the decree of confirmation, but are entitled to their interest in such of the lands embraced in the tax sale as were omitted from the decree. As the plaintiff in that case obtained an inequitable and unjust decree, it is by no means clear that it should in any case be corrected so as to cure mistakes made in enter-

ing it prejudicial to him; but the pleadings and· proof present no case which calls for the determination of that question, and the effect of the decree will be restricted to the lands described in it. The description of the lands in the decree is sufficiently definite and certain. It indicates the corner of the legal subdivision from which the part sold was to be taken and the number of acres in the part. As the law provided that the part should be laid out in a square, that was sufficient to locate the part sold.

A grantor who owns an undivided four-fifths of a tract of land, and conveys "a full half-interest in all the right, title and interest in and to" the land, conveys an undivided half interest in the land, and not in his interest. The terms of the grant are unusual, but we think they were employed to make it plain that a "full half interest in all the title" passed by the conveyance, as distinguished from a half of the grantor's interest. The deed contains covenants of general warranty, and it must be presumed that they were inserted for some purpose; but if the thing granted was only one-half of the grantor's interest, the covenant was nugatory; for if the grantor had nothing, the deed only purported to convey one-half of nothing, or if he had any interest, its purport was to grant half of whatever his interest might have been. With such a description of the thing granted, covenants are meaningless; but we do not think this a reasonable interpretation of the deed. It was intended to convey a full half interest in the land, and to warrant the title thereto. {5. Construction of deed.}

An amended bill alleged that the defendant had cut and sold timber and received rents from the land. Of these facts there is no proof, and ·the plaintiffs are entitled to no relief on that account.

The defendant has paid taxes upon the land since and including 1861, for which the plaintiffs' interest was. bound; the plaintiffs should pay him their portion of all sums thus paid, with interest at the rate of 6 per cent. from the respective dates of such payments, and the same should be made a charge upon their interest in the land. The amount of such {6. Contribution by co-tenants.}

payments is not disclosed, and an account thereof must be taken.

The plaintiffs are entitled to an undivided three-tenths of all the land, except those parts embraced within the decree of confirmation ; and the defendant to the remainder. The court erred in dismissing the complaint ; and the judgment will be reversed, and the cause remanded with directions to enter a decree for partition, and for further proceedings in accordance with this opinion.