# NORTH REAL ESTATE LOAN & TITLE CO., APPELLANT,
## *v.* BILLINGS LOAN & TRUST CO., RESPONDENT.

(No. 2,466.)

(Submitted December 7, 1907. Decided December 23, 1907.)

[93 Pac. 40.]

*Quieting Title—City Lots—Tax Sales—Sale en Masse—Tax Deeds—Invalidity—Equity Cases—Disposition of, on Appeal.*

Tax Sales—Noncontiguous City Lots—Sale *en Masse*—Tax Deed—Invalidity.

1. A tax deed to property assessed and sold under the provisions of the Fifth Division, Revised Statutes, 1879, the recitals in which showed that a number of noncontiguous city lots were sold *en masse*, was void upon its face and inadmissible in evidence in a suit to quiet title.

Equity Cases—Disposition of, on Appeal.

2. Where the supreme court, on appeal in an equity case, reverses the judgment, but no cause appears why a new trial or the taking of further testimony should be ordered, it will, under the provisions of the Act of 1903 (Laws 1903, Second Extra. Session, p. 7), enter a judgment finally determining the cause.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by the North Real Estate Loan and Title Company against the Billings Loan and Trust Company and others. From a judgment in favor of the Billings Loan and Trust Company, and from an order denying it a new trial, plaintiff appeals. Reversed and remanded.

*Mr. T. S. Hogan,* and *Mr. M. J. Lamb,* for Appellant.

In the absence of statutory provisions to the contrary, neither a tax deed nor its recitals are evidence against the owner of the regularity of any of the proceedings leading up to the tax sale, nor antecedent to the execution of the tax deed. (*Norris v. Russell,* 5 Cal. 249; Cooley on Taxation, 326, 354.) And the common-law rule applies, that one who claims under a tax sale takes upon himself to show, affirmatively, that the tax was duly

assessed and was a lien on the lands, and that the successive steps which led to the sale were regularly taken. (*Woolbridge v. State,* 43 N. J. L. 262.) The effect of a tax deed as evidence is determined by the law in force at the date of the sale. (*Nelson* v. *Rountree,* 23 Wis. 367; *Capital State Bank* v. *Lewis,* 64 Miss. 727, 2 South. 243; *Woodman* v. *Clapp,* 21 Wis. 355; *State* v. *Mantz,* 62 Mo. 258; *Cornelius* v. *Ferguson,* 16 S. Dak. 113, 91 N. W. 460; *Blackburn* v. *Lewis,* 45 Or. 422, 77 Pac. 746; *Eastern Carolina Lumber & Mfg. Co.* v. *State Board of Education,* 110 N. C. 35, 7 S. E. 573.) The Montana statute which makes a tax deed *prima facie* evidence of the transfer of the title of the delinquent, had not been passed when the tax sale here was made. That statute applies only to deeds, executed upon a sale, for taxes subsequently levied. This is the construction placed upon a similar California law, in *Keane* v. *Cannovan,* 21 Cal. 291, 82 Am. Dec. 738.

*Mr. James R. Goss,* and *Mr. W. M. Johnston,* for Respondent.

Plaintiff, having pleaded a tender of all the delinquent taxes, penalties, costs, charges and interest, thereby acknowledged that all necessary antecedent steps had been taken. One who pleads, in a suit to obtain relief from a tax deed, a tender of the amount paid by the purchaser for his tax deed, cannot contest the validity of the tax for the nonpayment of which the premises are sold, the tender being an admission of all the facts necessary to be pleaded to make out plaintiff's cause of action. (*Hines* v. *Cottle,* 143 Mass. 310, 9 N. E. 654; *Currier* v. *Jordan,* 117 Mass. 260; *Bacon* v. *Charlton,* 7 Cush. 581; *Conklin* v. *Cullen,* 29 Mont. 38, 74 Pac. 72; *Wells* v. *Missouri-Edison Electric Co.,* 108 Mo. App. 607, 84 S. W. 204; *Frink* v. *Coe,* 4 G. Greene (Iowa), 555, 61 Am. Dec. 141; *Cobbey* v. *Knapp,* 23 Neb. 579, 37 N. W. 485; *Marlin* v. *Whisler,* 62 Iowa, 416, 17 N. W. 593; *Rump* v. *Schwartz,* 56 Iowa, 611, 10 N. W. 99.) A plea of tender prevents the defendant from moving in arrest of judgment when plaintiff's petition does not state a cause of action. (*Wilson* v. *Chicago etc. Ry.,* 68 Iowa, 673, 27 N. W. 916; *Fox*

v. *Williams,* 92 Wis. 320, 66 N. W. 357.)   A tax deed is not invalid because it conveys a number of lots or parcels of land. (Mont. Rev. Stats. 1879, sec. 1039; *Waddingham* v. *Dickson,* 17 Colo. 223, 29 Pac. 177; *Crisman* v. *Johnson,* 23 Colo. 264, 58 Am. St. Rep. 224, 47 Pac. 296; *Dodge* v. *Emmons,* 34 Kan. 732, 9 Pac. 951; *Bennett* v. *Darling,* 15 S. Dak. 1, 86 N. W. 751; *Towle* v. *Holt,* 14 Neb. 221, 15 N. W. 203; *Gibson* v. *Shiner,* 74 Kan. 728, 88 Pac. 259; *Cartwright* v. *Korman,* 45 Kan. 515, 26 Pac. 48.)

MR. JUSTICE SMITH delivered the opinion of the court.

The above-named plaintiff, a corporation, alleges in its complaint that it is the owner and in possession of lots 5 and 6, in block 52, of the city of Billings; that it has title in fee to the lots, and that the defendants, naming several, claim an estate therein adverse to it, which claims are without any legality. The prayer is that plaintiff be declared to be the owner of the lots, that the defendants be adjudged to have no right or title thereto, and that they be enjoined from asserting any claim thereto adverse to plaintiff.   The Billings Loan and Trust Company, a corporation, was the only answering defendant.   After denying the material parts of the complaint, it alleged affirmatively that it is the owner of the lots in question by virtue of a certain tax deed.   The successive steps leading up to the issuance of the deed to one of the defendant's predecessors in interest are pleaded.   Plaintiff by replication denies the validity of this tax deed, for the reasons, among others, "that it is void upon its face, and is of no force or effect whatever, and did not convey any right, title, or interest in or to said lots, or any of them to the defendant, * * * or any other person whomsoever."   Other objections to the deed were raised, but we do not find it necessary to consider them.

The district court made findings of fact and conclusions of law in favor of the defendant, and entered a decree in accordance with the conclusions of law and the prayer of defendant's answer.   The plaintiff thereafter made its motion for a new

trial, which motion was overruled, whereupon it appealed from the judgment or decree and from the last-mentioned order.

It appears from the bill of exceptions that, after the plaintiff had shown its chain of title by mesne conveyances through the Northern Pacific Railroad Company, the Minnesota and Montana Land and Improvement Company, F. T. Robertson and wife, and Austin North Company to itself, it rested its case. Thereupon defendant offered in evidence a county treasurer's tax deed, which reads as follows:

"Know all men by these presents that whereas, the following described real property, to wit: Lots 20, 21, and 22 in block 6; lots 5 and 6 in block 52; lots 18 and 19 in block 53, city of Billings, situated in the county of Yellowstone, and Territory of Montana, was subject to taxation for the year A. D. 1886, and, whereas, the taxes assessed upon said real property for the year or years aforesaid, remained due and unpaid at the date of the sale hereinafter named;

"And whereas, the treasurer of said county did, on the 25th day of February, A. D. 1887, expose at public sale, at the court house, in the county aforesaid, in substantial conformity with all the requirements of the statute in such case made and provided, the real property above described, for the payment of the taxes, interest and cost then due and remaining unpaid on said property; and whereas, at the time and place aforesaid, Jas. R. Goss of the county of Yellowstone, and Territory of Montana, having offered the sum of eight dollars and 57 cents, being the whole amount of taxes unpaid on said property, which was the least quantity bid for, and payment of such sum having been made by him to the said treasurer, the said property was stricken off to him at that price; and whereas, the time of redemption having elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law;

"Now therefore, I, A. S. Douglas, treasurer of the county aforesaid, for and in consideration of the sum, to the treasurer paid as aforesaid, and by virtue of the statute in such case

made and provided, have granted, bargained, and sold, and by these presents do grant, bargain and sell unto the said Jas. R. Goss, his heirs and assigns, the real property last here described. To have and to hold unto him the said Jas. R. Goss, his heirs and assigns, forever.

"In witness whereof, I, A. S. Douglas as aforesaid by virtue of authority aforesaid as aforesaid, have hereunto subscribed my hand on the seventh day of May, A. D. 1888.

"A. S. DOUGLAS,

"County Treasurer."

To the introduction of this deed in evidence the plaintiff's counsel interposed the following objection: "That it is a deed to a private individual, and not to the county, and shows that three separate noncontiguous pieces of property are included therein, and in the recitals thereof it appears that the three parcels were sold together, and that the whole of said three tracts of land were purchased as the least quantity bid for." The court overruled the objection, and admitted the deed in evidence. Thereupon defendant introduced in evidence, over plaintiff's objection, a deed from Jas. R. Goss and wife to Albert Carswell, a deed from Carswell to Wm. Read, and a deed from Read and wife to the defendant, all purporting to convey lots 5 and 6 in block 52, and, after one Burton had testified that the property was vacant and unoccupied, rested its case. There was no rebuttal testimony, and the plaintiff thereupon asked for a judgment in its favor "for the reason that the defendant has failed to make any defense to the action." This motion was denied and a decree entered for the defendant, as before stated. No evidence as to adverse possession or abandonment was offered at the trial, and the question of laches is not discussed in the briefs, and was not touched upon in the argument.

The property in question was assessed for taxes by virtue of the provisions of Revised Statutes of Montana, 1879, Fifth Division. A reference to those statutes discloses the following provisions:

"Sec. 1001.   Every tax levied under the provision of this chapter is hereby made a lien against any and all the property assessed, and such lien shall attach at the time of such assessment, and shall not be satisfied or removed until such taxes are paid."

"Sec. 1004.   Every inhabitant of this Territory, of full age and sound mind, shall *list* all property subject to taxation in this Territory of which he is the owner," etc.

"Sec. 1011.   The district assessors of each county shall assess and value all property required by the provisions of this article to be assessed and valued, and between the first day of February and the tenth day of September in each year, shall demand of each tax payer in his district *a list,* as hereinafter provided, of his, her, or their property," etc.

"Sec. 1013.   The *list* shall contain: First: His, her, or their lands, to be designated by township, range, section, and any division or part of section; and where such part is not a government division or subdivision, then some other description to identify it; and his town lots, naming the town in which they are situated, and their proper description, by number and blocks, or otherwise, according to the system of numbering in the town.

"Sec. 1014.   Before proceeding to assess any property under the provisions of this article, it is hereby made the duty of the assessor to administer to the person about to be assessed the following oath or affirmation: [Giving form of oath.]   And to ask him, among other questions, the following: How many town lots do you own? Where are they? Describe them.

"Sec. 1015.   On or before the tenth of September, annually, the assessor shall make out and deliver to the county clerk an assessment-roll, containing in tabular form and alphabetical order, the names of the persons and bodies in whose names property has been *listed* in his district, with the several species of property and the value, as hereinbefore indicated, with the columns of numbers and value footed," etc.

"Sec. 1030.   The treasurer shall give notice of the sale of real property.   *   *   *   Such notice shall contain a notifica-

tion that all lands on which the taxes of the preceding year or years, naming it, have not been paid, will be sold, and the time and place thereof, *with a list of the lands,*" etc.

"Sec. 1035. The county treasurer shall make out, sign and deliver to the purchaser of any real property sold for the payment of taxes as aforesaid, a certificate of purchase, describing the property on which the taxes and costs were paid by the purchaser, as the same was described in record of sales, and also how much and what part of each tract or lot was sold, and stating the amount of each kind of tax, interest and costs, for each tract or lot for which the same was sold, as described in record of sales, and that payment has been made therefor. If any purchaser shall become the purchaser of more than one parcel of property, he may have the whole included in one certificate."

"Sec. 1037. Real property sold under the provisions of this article may be redeemed at any time before the expiration of one year from the date of the sale, by the payment to the treasurer of the proper county, to be held by him subject to the order of the purchaser, of the amount for which the same was sold and subsequent taxes," etc.

"Sec. 1038. The county treasurer shall, upon application of any party to redeem any real property sold under the provisions of this article, and being satisfied that such party has the right to redeem the same, and upon the payment of the proper amount, issue to such party a certificate of redemption, setting forth the facts of the sale, substantially as contained in certificate of sale," etc.

"Sec. 1039. Immediately after the expiration of the time allowed for the redemption of any land sold for taxes under the provisions of this article, the treasurer then in office shall make out a deed for each lot or parcel of land sold and remaining unredeemed, and deliver the same to the purchaser upon the return of the certificate of purchase;   *   *   *   any number of parcels of land bought by one person, may be included in one deed, as may be desired by the purchaser."

Section 1040 provides a form of tax deed, of which the one received in evidence in this case is a substantial copy.

It will be seen from the foregoing quotations that at the time these lots were assessed and sold for taxes, the law required that the owner should furnish to the assessor a list of his property; and, in case of town lots, that he should name the town in which they were situated, and give a proper description thereof by number and blocks, and that from the lists so obtained the assessor should make out an assessment-roll containing the names of the persons who had listed property in his district, together with the several species of property and the value thereof.

The legislature of 1887 passed a law providing that ''each tract of land, and each town or city lot, shall be valued and assessed separately, except when one or more *adjoining* tracts or lots are returned by the same person, in which case they may be valued and assessed jointly.'' (Comp. Stats. 1887, Fifth Div., sec. 1696.) The supreme court of California in the case of *Terrill* v. *Groves,* 18 Cal. 149, said this: ''The Act of April, 1857, under which these proceedings were taken, in the fourth section provides that the assessor shall set down in his assessment-book (1) the names of all taxable inhabitants; (2) all real estate and improvements on public lands taxable to each, giving the metes and bounds, or describing by lots or fractions of lots; (3) the cash value of all improvements on real estate, etc. We think the true meaning of the provision is to require a separate assessment and valuation of each lot in cases like this of city property. If a man owned a hundred lots, or if, after the assessment, he sold some of them, and it became necessary or desirable to pay the taxes on a part of the property, it would be impossible to do so without paying the full amount assessed. It was evidently the intention of the statute that each lot should be made to bear its own portion of the public burdens, and a great deal of confusion and injustice would grow out of a gross assessment of several lots, and a sale in gross for the payment of the general tax. This construction seems to be given to the provisions of statutes not very dissimilar in Maine and Ohio

(*Shimmin* v. *Inman,* 26 Me. 228, and *Willey* v. *Scoville's Lessee,* 9 Ohio, 43), and we think it warranted by the language of our own Act.''

We are of opinion that the passage of section 1696, *supra,* by the legislature of 1887, added nothing to the duties of the assessor as the same were indicated by the provisions of the Revised Statutes of 1879, above quoted.

In the case of *Casey* v. *Wright,* 14 Mont. 315, 36 Pac. 191, the court said: ''In *Terrill* v. *Groves,* 18 Cal. 149, a case very similar to the one under consideration, the court says: 'The plaintiff claims under a tax deed. It seems that these lots were assessed as the property of one Alonzo Green. They were separately listed, but valued jointly, and the aggregate tax on all of them, and two other lots in other blocks, set down. The lots sued for were contiguous to each other, and formed a part of block No. 28 on the plan of the city. These lots were put up and sold together for the aggregate amount of this tax. The appellants contend that this was illegal, and that the sale and the consequent deed were void; and we are of the same opinion.' We think the authorities are almost unanimous that such a sale is void.''

In the case of *Emerson* v. *Shannon,* 23 Colo. 274, 58 Am. St. Rep. 232, 47 Pac. 302, the court said: ''The defendant, to maintain his title at the trial, offered in evidence a tax deed purporting to convey lands sold for delinquent taxes *en masse* for a gross sum, viz.: [Here follows description of the land.] We have just held in the case of *Crisman* v. *Johnson,* 23 Colo. 264, 58 Am. St. Rep. 224, 47 Pac. 296, that under our statute it is lawful for the authorities to assess and sell *en masse,* for delinquent taxes, a number of town lots. Section 3822, Mills' Annotated Statutes, provides for such assessment if the lots are listed by the same person; and section 3894 provides that, 'when  *  *  * adjoining lots are offered as the property of the same person, one or more may be sold for the taxes of all.' It is not necessary to determine whether, when all our statutes on the subject are considered, it is permissible to sell for taxes several tracts of

contiguous acre property, as such a case is not presented, as the description given of the several tracts in the treasurer's deed will only apply to lands that are not contiguous, but widely separated and in different townships.   It shows that these non-contiguous tracts were sold together for a gross sum.   When this instrument was offered in evidence for the purpose of showing title in the defendant, the court properly rejected the same.   The authorities are uniform that such a deed is absolutely void.''

In the case of *Speed* v. *McKnight,* 76 Miss. 723, 25 South. 872, the court said: ''The assessment under which this property was sold and the sale were utterly void.   *   *   *   The assessment here was the act of the sheriff, and the lots were physically widely separated and of different values, as shown by proof, and should not have been sold as one tract.''

In the case of *National Bank of Augusta* v. *Baker Hill Iron Co.,* 108 Ala. 635, 19 South. 47, this language is found: ''There can be no sort of doubt that the tax sale and deed under which plaintiff claims were absolutely void, for the reason that the assessment and sale were not made in compliance with the statutory requirements.   *   *   *   The assessment in question *   *   *   embraced a great many pieces of property, none of which were valued separately, as required by section 33 of the Act, but all were assessed at one gross valuation.   *   *   *   Finally, the property was not offered for sale by sections or parts of sections, as required by section 79, but was sold *en masse,* though there were many different and disconnected subdivisions of sections.''

In *Cocks* v. *Simmons,* 55 Ark. 104, 29 Am. St. Rep. 28, 17 S. W. 594, it was said: ''By the recitals of the deed four sections of land severally assessed were sold in a body for the sum of the taxes due upon all.   Each section was thereby sold for the taxes due upon each of the others, as much as for the taxes due upon it.   Such a sale is absolutely void, for the collector has no more authority to sell one tract of land for a tax due upon another than for a store account or other ordinary debt.''

In *Cornelius* v. *Ferguson*, 16 S. Dak. 113, 91 N. W. 460, it was said: "But the deed, when read in connection with the eighth finding of fact, is clearly shown to be void, as the court in the latter finding finds that the lots for the year 1889 were sold in bulk for the gross sum of $59.55. Reading, therefore, the two findings together, the court was clearly right in its conclusions of law that the tax deed was void on its face."

The supreme court of Iowa, in *Ackley* v. *Sexton*, 24 Iowa, 320, used this language: "This tax deed was void upon its face, because it embraced several distinct tracts of land, which purported to have been sold *en masse* for a gross sum. It was precisely such a deed as has been adjudged void on its face by prior decisions of this court."

Judge Cooley, in his work on Taxation (second edition), page 493, thus expresses his views on the subject under consideration: "To group lands in the sale which are assessed as separate interests is incompetent, even though they be owned by the same person. Each parcel is chargeable with its own taxes, and is to be redeemed by paying them; but such a joint sale charges it with tax upon the other also, and is like issuing one execution upon several judgments, and selling jointly the lands which are charged with separate liens. It may or may not be important to the owner that he have the opportunity of a separate redemption, but the fact that it possibly may be so is sufficient reason why the law should protect the right." (See, also, *Cartwright* v. *McFadden*, 24 Kan. 662; *Wyer* v. *La Rocque*, 51 Kan. 710, 33 Pac. 547; *Weeks* v. *Merkle*, 6 Okla. 714, 52 Pac. 929; *Lowenstein* v. *Sexton*, 18 Okla. 322, 90 Pac. 410; *Barnes* v. *Boardman*, 149 Mass. 106, 21 N. E. 308, 3 L. R. A. 785; *Gibson* v. *Kueffer*, 69 Kan. 534, 77 Pac. 282.)

In reply to the contention of the appellant, counsel for the respondent calls attention to section 1039 of the Revised Statutes of 1879, *supra*, which provides that any number of parcels of land bought by one person may be included in one deed, if the purchaser so desires, and numerous cases are cited from other states to uphold this proposition. Under the statute, there is no

doubt that a deed would not be invalid because it conveys a number of lots or parcels of land; but it is equally clear to us that, where a deed shows on its face that several noncontiguous parcels of property were sold *en masse,* the deed is void.

The deed received in evidence in this case shows, on its face, that certain lots in blocks 6, 52, and 53, in the city of Billings, were assessed together, and that they were sold *en masse* for $8.57.  We know, of course, that blocks in cities and towns are bounded by streets and alleys, and it therefore follows that the lots in these different blocks could not be adjoining lots.  As was indicated by the supreme court of California and also by Judge Cooley, *supra,* the object of the statute undoubtedly was to provide that the officers' books should show the tax which attached as a lien to each separate lot, piece or parcel of land, so as to enable the owner, or his successor in interest, to redeem any one lot by paying the tax thereon without any obligation to pay the tax on other lots in order to clear the title to the particular lot.  It seems to us that this is a reasonable right or privilege secured to the owner, and that the courts have properly by their decisions recognized and protected the same.

We hold that the tax deed received in evidence in this case is void on its face, and ought not to have been considered by the trial court.

This being an equity case, and no cause appearing why a new trial or the taking of further evidence should be ordered, it is our duty to finally determine the same.  (Code Civ. Proc., sec. 21, as amended by the legislature in Acts, 2d Leg. Extra. Sess. 1903, Chap. 1, p. 7.)  It is therefore directed that the judgment and order appealed from be, and the same are hereby, reversed, and the cause is remanded to the district court of Yellowstone county, with instructions to enter a judgment in favor of the plaintiff in accordance with the prayer of its complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied January 17, 1908.