HOUSTON *v.* GRIFFIN.

5-1241                                                           300 S. W. 2d 931

Opinion delivered April 15, 1957.

*Spitzberg, Bonner, Mitchell* and *Hays* and *Kaneaster Hodges,* for appellant.

*Neill Reed,* for appellee.

GEORGE ROSE SMITH, J.   Dr. Troy Raney and his wife formerly owned eighty acres of land as tenants by the entirety.   The appellant, G. P. Houston, claiming title under separate deeds from Dr. and Mrs. Raney, brought this suit to enjoin the sheriff from selling the land under a writ of execution issued upon a judgment which

the appellee W. R. Griffin had obtained against the Raneys. The sale was held, however, and Griffin was the purchaser. Houston then amended his complaint to ask that the execution proceedings be canceled as a cloud upon his title. Griffin countered with a request that the deeds from the Raneys to Houston be set aside as fraudulent conveyances.

Upon trial of the case the chancellor sustained the deed from Mrs. Raney to Houston, but the court held that Houston's claim of title under two deeds from Dr. Raney was subordinate to the lien of Griffin's judgment. The court concluded that Houston owns an undivided half interest in the land under his deed from Mrs. Raney and that Griffin owns the other undivided half interest by reason of his purchase at the sheriff's sale. (This holding evidently means that Houston and Griffin became tenants in common. Since neither party contends that they should instead be treated as what might be called tenants by the entirety *pur autres vies,* we do not examine that issue.) In addition, the court granted to Houston a right of contribution with respect to a mortgage debt and certain taxes that he had paid. Both parties have appealed.

Most of the issues hinge on the basic question of whether the Raneys' deeds to Houston were fraudulent. Griffin obtained his judgment against the Raneys on August 17, 1954; so his asserted lien against the land became effective on that date. Houston relies upon a quitclaim deed from Mrs. Raney, dated June 7, 1954, and upon two quitclaim deeds from Dr. Raney, the first dated July 15, 1954, and the second dated September 15, 1954. All three deeds to Houston were filed for record more than a year after the entry of Griffin's judgment.

The evidence supports the chancellor's finding that Mrs. Raney's deed was not a fraudulent conveyance. Houston had acted as one of Mrs. Raney's attorneys in a divorce suit against Dr. Raney and had obtained a divorce decree for her on April 20, 1954. Both Houston and Mrs. Raney testified that during the pendency of the divorce proceedings Houston lent some $380 or more to Mrs.

Raney, to pay living expenses for herself and her children. Mrs. Raney's conveyance of her interest in the land was given to satisfy this debt. It is not shown whether the value of Mrs. Raney's interest in the land was greater or less than the amount of her obligation to Houston. The deed is dated June 7, 1954, which was before the entry of Griffin's judgment against the Raneys. Except for the delay in the recording of the instrument there is nothing to indicate that the deed was executed after the date on which it was ostensibly signed and acknowledged. We conclude that Griffin failed to meet the burden of proving Mrs. Raney's deed to be fraudulent.

Houston contends that the chancellor should also have upheld his claim to Dr. Raney's former interest in the land. The divorce decree in favor of Mrs. Raney, entered in April of 1954, had directed that Dr. Raney pay a fee of $400 to Mrs. Raney's attorneys. Houston attempted to collect this fee in June by writing to Dr. Raney, who had moved to Nevada. In reply Dr. Raney expressed his willingness to pay the fee as soon as he could. Houston then prepared a quitclaim deed for Dr. Raney's signature and mailed it on July 5. According to Houston's recollection, he received the executed deed about August 1. He says that later on Raney's father-in-law insisted that the deed expressly recite that it was in satisfaction of the $400 attorney's fee. A second deed was therefore prepared and sent to Dr. Raney, who executed and acknowledged it on September 15, which was after the effective date of Griffin's lien against the land. It is contended that the second deed was merely a correction or amplification of the first, although it does not so recite. The chancellor held that the title was still in Dr. Raney when Griffin obtained his judgment.

Neither Dr. Raney nor the notary who purportedly took the acknowledgment on both deeds was called as a witness. The deed of September 15 is admittedly genuine, but the testimony about the authenticity of the July 15 conveyance is in conflict. A comparison of the original instruments indicates rather clearly that the handwriting on the July deed was copied from that on the

genuine deed of September 15. It follows that the questioned instrument could not have been executed prior to Griffin's judgment of August 17. The following matters are readily apparent from a comparison of the genuine deed and the one subject to question:

(a) The signatures of Dr. Raney and of the notary on the September deed are written smoothly with even strokes of the pen. Those on the July deed are jerky and, as Griffin testified, have the appearance of having been traced.

(b) On the genuine deed the notary made in the lower lefthand corner an unusual notation, which reads: "State of Nevada, County of Washoe. Leona A. Mosbaugh notary. My Commission Expires June 15, 1958." The notary also completed the printed acknowledgment on the back of the deed, but there the heading refers to Churchill county instead of Washoe county. The July deed contains the same meaningless notation on its face and the same reference to a different county in the acknowledgment.

(c) The notary's pointless notations on the two deeds are remarkably similar with respect to the position of the written lines, the spacing of the words, and certain characteristics by which the notary's signature on the face of each deed differs from her signature on the back of each deed.

(d) On each deed a rubber stamp was used to show the expiration date of the notary's commission. The stamped lines are of different length and could not have been made with the same rubber stamp.

(e) The embossed impressions left by the notary's seal on the two deeds, although identical in wording, are dissimilar in numerous details and could not have been made with the same seal.

Upon these facts it is evident that the chancellor was warranted in sustaining the priority of Griffin's claim to the half interest formerly owned by Dr. Raney.

Houston contends that even if his assertion of title to Dr. Raney's interest is rejected his judgment lien for an attorney's fee is nevertheless valid as against the title subsequently acquired by Griffin at the sheriff's sale. Houston testified, however, that he had satisfied the record of the judgment, and this had the effect of releasing the lien upon the land. *Fields* v. *Jarnagin,* 210 Ark. 1054, 199 S. W. 2d 961. It is also argued that the chancellor should not have taxed the costs against Houston. This matter rested in the chancellor's discretion, and we cannot say that Houston's equitable position is so markedly superior to Griffin's that an abuse of discretion occurred. *Fry* v. *White,* 132 Ark. 606, 201 S. W. 1105.

Griffin in turn insists that the trial court erred in upholding Houston's claim for contribution with respect to a purchase money mortgage (incurred by the Raneys) which Houston discharged and with respect to taxes which Houston paid. These obligations were encumbrances upon the land held by the parties as tenants in common; the chancellor was right in requiring Griffin to bear his fair share of the burden. *Cocks* v. *Simmons,* 55 Ark. 104, 17 S. W. 594, 29 A. S. R. 28.

Affirmed on direct and cross appeal, the parties to bear their own costs of appeal.